ORAL ARGUMENT NOT YET SCHEDULED
No. 20-7036
(Consolidated with No. 23-7037)

# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

_____

AGUDAS CHASIDEI CHABAD OF UNITED STATES,

*Plaintiff-Appellee,*

— v. —

RUSSIAN FEDERATION; RUSSIAN MINISTRY OF CULTURE AND MASS
COMMUNICATION; RUSSIAN STATE LIBRARY; RUSSIAN STATE MILITARY ARCHIVE,

*Defendants-Appellees,*

TENEX-USA, INCORPORATED;
STATE DEVELOPMENT CORPORATION VEB.RF

*Appellants.*

_____

*On Appeal from the United States District Court
for the District of Columbia*

_____

## BRIEF FOR PLAINTIFF-APPELLEE

_____

Robert P. Parker
Steven Lieberman
Paul S. Macri
ROTHWELL, FIGG, ERNST & MANBECK, P.C.
901 New York Ave., N.W., Suite 900 East
Washington, D.C. 20001
Telephone:  202-783-6040
Email:  rparker@rfem.com

November 15, 2023          *Counsel for Plaintiff–Appellee*

## CERTIFICATE AS TO PARTIES, RULINGS AND RELATED CASES

Pursuant to D.C. Circuit Rule 28(a)(1), Plaintiff-Appellee Agudas Chasidei Chabad of United States, through counsel, hereby certifies as follows:

## I.    PARTIES AND AMICI

Appellant in No. 20-7036 is Tenex-USA, Incorporated ("Tenex-USA").[1] Tenex-USA is the U.S. agent of Joint Stock Company Techsnabexport ("JCS-Tenex"), a Russian company that self-identifies as "a leading global supplier of nuclear fuel cycle products and back-end materials, works and services." JA__(Opp'n to Mot. Quash 11, ECF No. 180) (quoting JA__(Decl. Robert Parker Ex. H, at 1-2, ECF No. 180-12)).  JSC-Tenex is the successor to the Soviet Union's nuclear agency, and is now part of Rosatom, the Russian Federation's agency for civilian and military nuclear matters.  JA__(*Id.* at 8-10) (citing JA__(Decl. Robert Parker Ex. B-2, at 11, ECF No. 180-4)).  JSC-Tenex has been designated in a US-Russian bilateral agreement as the Russian government's agent in connection with matters relating to trade in nuclear materials.  JA__(Mot. to Attach 30, ECF No. 235) (citing JA__(Decl. Robert Parker Ex. S, at 7705, ECF No. 235-20).  Tenex-USA's articles of incorporation provide that "[t]he Company shall be guided in its activities by the basic principles of government policy in the area of managing and

---

[1]    Tenex-USA was previously known as "Tenam," and is referred to by that name in some prior opinions in this Court and in the district court.

i

administering property and assets of organizations of the atomic energy complex of the Russian Federation as provided by" Russian law.  JA__(Opp'n to Mot. Quash 11, ECF No. 180) (quoting JA__(Decl. Robert Parker Ex. F-2, at 1, ECF No. 180-10)).

Appellant in No. 23-7037 is State Development Corporation VEB.RF ("VEB"), formerly known as Vnesheconombank.  VEB, Russia's "national development institution," is financed by the Russian government and supports Russian development projects.  JA__(Decl. Robert Parker Ex. E, at 1-2, ECF No. 235-6).  VEB is under the direct control of Russian government officials, including President Vladimir Putin.  JA__(Mot. to Attach 17, ECF No. 235) (citing JA__(Decl. Robert Parker Ex. E, at 2-5, ECF No. 235-6)).  Senior U.S. government officials have characterized VEB as a "glorified piggy-bank for the Kremlin." JA__(*Id*. at 13) (quoting JA__(Decl. Robert Parker Ex. A, at 2, ECF No. 235-2)).

Appellee Agudas Chasidei Chabad of United States ("Chabad") is a religious institution organized under New York law. Chabad was founded in the Russian town of Lubavich in 1775.  In the wake of the catastrophic upheavals in Russia (including the imposition by the Soviet Union of a death sentence on the Sixth Chabad Rebbe for the "counter revolutionary activities" of establishing Jewish schools), and then throughout Europe between 1939 and 1945, Chabad relocated to New York. *Agudas Chasidei Chabad of U.S. v. Russian Fed'n*, 528

F.3d 934, 938-39 (D.C. Cir. 2008) ("*Chabad I*").  This case concerns irreplaceable religious texts and documents that Chabad had to abandon, and that Russia expropriated, when Chabad fled Europe.  As this Court recognized in its previous opinions in this case, Chabad has demonstrated that Russia expropriated Chabad's property in violation of international law.  *Id*. at 942-46.  Russia has ignored the district court's judgment ordering the return of Chabad's sacred materials.

The defendants below are the Russian Federation, Russia's Ministry of Culture and Mass Communication, the Russian State Library, and the Russian State Military Archive.  The Russian State Library and Russian State Military Archive are Russian "federal state institution[s]" that were, at relevant times, under control of the Ministry of Culture.  *Agudas Chasidei Chabad of U.S. v. Russian Fed'n*, 729 F. Supp. 2d 141, 147 (D.D.C. 2010).  The Russian State Library and Russian State Military Archive took possession of the Chabad property at issue; that is, the property that the Russian Federation unlawfully expropriated.

The Simon Wiesenthal Center, Inc., a global human rights organization focused on confronting the hate and bigotry of modern anti-Semitism through research and education, participated as *amicus curiae* in the proceedings before the district court.

***

iii

*In its brief, VEB adopts the arguments in the brief filed by Tenex-USA. Because VEB offers no separate arguments, Chabad directs the remainder of this brief to the arguments set out in Tenex-USA's brief.*

## II.    RULINGS UNDER REVIEW

Chabad filed this lawsuit in the United States District Court for the Central District of California in 2004 asserting claims against defendants (collectively, "Russia") for the expropriation of Chabad's property in violation of international law. Russia filed a motion to dismiss, asserting that the district court lacked jurisdiction over defendants under the Foreign Sovereign Immunities Act ("FSIA"), and raising other defenses. Following transfer to the United States District Court for the District of Columbia, the district court granted Russia's motion in part and denied it in part. On cross-appeals, this Court upheld the district court's jurisdiction over Chabad's claims in their entirety, and rejected Russia's sovereign immunity arguments *in toto*. *Chabad I*, 528 F.3d at 939.

After remand, Russia eventually withdrew from the case and the district court entered a default judgment against all defendants ordering them to return the stolen materials to Chabad. *Chabad*, 729 F. Supp. 2d at 148. When Russia refused to comply with the judgment, the district court authorized Chabad to enforce the default judgment by attachment, and later imposed daily fines (payable to Chabad) to encourage compliance. *Agudas Chasidei Chabad of U.S. v. Russian Fed'n*, 798

iv

F. Supp. 2d 260, 263 (D.D.C. 2011); *Agudas Chasidei Chabad of U.S. v. Russian Fed'n*, 915 F. Supp. 2d 148, 150 (D.D.C. 2013).  The district court subsequently entered a money judgment against each of the defendants, jointly and severally, in the amount of the accrued sanctions.  *Agudas Chasidei Chabad of U.S. v. Russian Fed'n*, 128 F. Supp. 3d 242, 249 (D.D.C. 2015).  The district court also held that Chabad was entitled to proceed with post-judgment discovery in an effort to identify potentially attachable Russian assets. [2]

Chabad served subpoenas on Tenex-USA seeking attachable Russian assets. The district court denied Tenex-USA's motion to quash.  JA__(Dec. 20, 2019 Mem. Order 8, ECF No. 198).  Tenex-USA then filed a motion under Rule 60(b) of the Federal Rules of Civil Procedure, asking the district court to vacate the judgment against the Russian Federation (but not the other defendants).  The district court denied the motion.  JA__(July 28, 2020 Mem. Order 3, ECF No. 221).  "In addition, the district court confirmed that its denial of immunity to the Russian Federation had been affirmed by this court in *Chabad I[.]" Agudas Chasidei Chabad of United States v. Russian Fed'n,* 19 F.4th 472, 475 (D.C. Cir. 2021) ("*Chabad II*").  Tenex-USA appealed, again challenging the district court's

---

[2]      As Chabad has explained in prior proceedings, its ultimate objective is not to attach Russian property or to secure payment of the sanctions.  Chabad is taking these steps as a means to secure the return of its sacred property.

jurisdiction. This Court held that Tenex-USA lacked standing to challenge the district court's judgment. *Id.* at 477.

On remand, Chabad moved for permission to attach certain assets owned by Tenex-USA's Russian parent, JSC-Tenex. JA__(Mot. to Attach 1, ECF No. 235). On February 27, 2023, the district court denied Chabad's motion without prejudice, pending service of certain materials on Russia through diplomatic channels.[3] JA____(Order, ECF No. 267), JA__(Memorandum Opinion ("Mem. Op.") 22, ECF No. 268). Tenex-USA noticed this interlocutory appeal, again challenging the district court's jurisdiction, citing comments in the memorandum accompanying the district court's February 27, 2023 Order. JA__(Notice of Appeal, ECF No. 274).

## III.    RELATED CASES

In the Related Cases section of its brief, Tenex-USA refers to prior decisions in this case or in related proceedings. None of those prior decisions, except for the district court's February 23, 2023 Order, is before this Court. Insofar as Chabad is aware, there are no related cases pending before this Court or in any other state or federal court.

---

[3]      The United States Department of State effected such service on October 11, 2023. JA__(Affidavit Of Service, ECF No. 285).

## <u>CORPORATE DISCLOSURE STATEMENT</u>

Pursuant to Federal Rule of Appellate Procedure 26.1 and D.C. Circuit Rule 26.1, Appellee Agudas Chasidei Chabad of United States states that it is a non-profit religious corporation organized under the laws of New York State.  Chabad has no parent company or shareholders, and therefore no public entity owns or controls 10% or more of an interest in Chabad.

# <u>TABLE OF CONTENTS</u>

**Page**

CERTIFICATE AS TO PARTIES, RULINGS AND RELATED CASES .............. i

I.    Parties and Amici.......................................................................... i

II.   Rulings Under Review.................................................................. iv

III.  Related Cases .............................................................................. vi

CORPORATE DISCLOSURE STATEMENT ...................................... vii

TABLE OF CONTENTS.................................................................... viii

TABLE OF AUTHORITIES ...............................................................x

GLOSSARY.................................................................................... xiv

JURISDICTIONAL STATEMENT ......................................................1

PERTINENT STATUTES...................................................................4

STATEMENT OF THE ISSUES...........................................................6

STATEMENT OF THE CASE..............................................................7

I.    Russia's Expropriation of the Chabad Collection ...........................7

II.   Chabad's Lawsuit Against Russia for Return of the Collection ....................8

III.  Chabad's Efforts to Identify and Attach Russian Assets .............................10

IV.   Tenex-USA's Notice of Appeal ...................................................12

V.    VEB's Appeal.............................................................................13

STANDARD OF REVIEW ................................................................13

SUMMARY OF ARGUMENT ...........................................................13

ARGUMENT ..................................................................................16

I.    This Court Does Not Have Jurisdiction to Hear Tenex-USA's
      Appeal........................................................................................16

A.   Tenex-USA Has Improperly Raised Issues Not Addressed in the District Court Order on Appeal ......................................................16

B.   Neither of the Issues Tenex-USA Has Raised in Its Notice of Appeal is Open to Review...............................................................19

    1.   Subject-Matter Jurisdiction......................................................19

    2.   Attachment Jurisdiction ............................................................20

II.   Tenex-USA's Challenge to the District Court's Jurisdiction is Barred by the "Doctrine of Jurisdictional Finality" ......................................23

III.   The Panel Decision in *Chabad I* Expressly and Correctly Rejected the Russian Federation's Sovereign Immunity Defense .............................27

A.   Overview of the FSIA's Expropriation Exception.............................29

B.   The *Chabad I* Panel Decision..............................................32

C.   Later D.C. Circuit Panel Decisions ......................................37

D.   Conclusion................................................................44

IV.   The District Court's Judgments Are Authorized By, And Consistent With, The FSIA And Precedent....................................................44

A.   Chabad's Request to Attach Tenex-USA Property Does Not Violate a Territorial Limitation in the FSIA ......................................45

B.   Chabad's Proposed Attachment of Russian Federation Assets "Relates to" the District Court's Judgment Ordering Return of Chabad's Property...........................................................47

CONCLUSION ..................................................................52

CERTIFICATE OF COMPLIANCE....................................................53

ADDENDUM – PERTINENT STATUTES AND OTHER AUTHORITIES

CERTIFICATE OF SERVICE

ix

# TABLE OF AUTHORITIES

**Pages(s)**

**Cases**

*Agudas Chasidei Chabad of U.S. v. Russian Fed'n,*
128 F. Supp. 3d 242 (D.D.C. 2015) ................................................. v, 10

*Agudas Chasidei Chabad of U.S. v. Russian Fed'n,*
466 F. Supp. 2d 6 (D.D.C. 2006) ...........................................................9

*Agudas Chasidei Chabad of U.S. v. Russian Fed'n,*
729 F. Supp. 2d 141 (D.D.C. 2010) ..........................................iii, iv, 9

*Agudas Chasidei Chabad of U.S. v. Russian Fed'n,*
798 F. Supp. 2d 260 (D.D.C. 2011) ................................................. v, 10

*Agudas Chasidei Chabad of U.S. v. Russian Fed'n,*
915 F. Supp. 2d 148 (D.D.C. 2013) ................................................. v, 10

*Agudas Chasidei Chabad of U.S. v. Russian Fed'n,*
No. 23-7036, Order (D.C. Circ. Aug. 10, 2023) .....................................2

*Agudas Chasidei Chabad of U.S. v. Russian Fed'n,*
19 F.4th 472 (D.C. Cir. 2021) ................................ v, vi, 10, 12, 14, 15, 20, 25, 28

*Agudas Chasidei Chabad of U.S. v. Russian Fed'n,*
528 F.3d 934 (D.C. Cir. 2008) ..............iii, iv, 1, 7, 8, 9, 25, 32, 34, 35, 37, 38, 39

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009) ..............................................................................20

*Bell Helicopter Textron, Inc. v. Islamic Republic of Iran,*
734 F.3d 1175 (D.C. Cir. 2013) ...........................................................24

*Chalabi v. Hashemite Kingdom of Jordan,*
543 F.3d 725 (D.C. Cir. 2008) .............................................................18

*Cioffi v. Gilbert Enters., Inc.,*
769 F.3d 90 (1st Cir. 2014) ..................................................................17

*de Csepel v. Republic of Hungary,*
859 F.3d 1094 (D.C. Cir. 2017) ................................................ 39, 40, 41

*Dubin v. United States,*
  599 U.S. 110 (2023) ........................................................................50

*\*Durfee v. Duke,*
  375 U.S. 106 (1963) ................................................................... 6, 23

*\*Elec. Fittings Corp. v. Thomas & Betts Co.,*
  307 U.S. 241 (1939) ........................................................................17

*Federated Dep't Stores, Inc. v. Moitie,*
  452 U.S. 394 (1981) ........................................................................25

*FG Hemisphere Assocs., LLC v. Democratic Republic of Congo,*
  637 F.3d 373 (D.C. Cir. 2011) .......................................................48

*Fuentes v. Shevin,*
  407 U.S. 67 (1972) ..........................................................................46

*GSS Grp. Ltd. v. Nat'l Port Auth. of Liberia,*
  822 F.3d 598 (D.C. Cir. 2016) .......................................................25

*\*Harvey v. District of Columbia,*
  798 F.3d 1042 (D.C. Cir. 2015) .....................................................17

*Huisha-Huisha v. Mayorkas,*
  27 F.4th 718 (D.C. Cir. 2022) ........................................................13

*\*Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee,*
  456 U.S. 694 (1982) ................................................................... 6, 23

*Kokkonen v. Guardian Life Ins. Co. of Am.,*
  511 U.S. 375 (1994) ..........................................................................2

*Lucky Brand Dungarees, Inc. v. Marcel Fashions Grp., Inc.,*
  140 S. Ct. 1589 (2020), ........................................................... 26, 27

*Mitchell v. Forsyth,*
  472 U.S. 511 (1985) ................................................................... 21, 22

*Peterson v. Reisch,*
  585 F.3d 1091 (8th Cir. 2009) .......................................................22

*Practical Concepts, Inc., v. Republic of Bolivia,
    811 F.2d 1543 (D.C. Cir. 1987) ........................................................24

Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.,
    506 U.S. 139 (1993) ..........................................................................21

*Republic of Argentina v. NML Capital, Ltd.,
    573 U.S. 134 (2014) ..........................................................................40

S & S Mach. Co. v. Masinexportimport,
    706 F.2d 411 (2d Cir. 1983) .............................................................51

Simon v. Republic of Hungary,
    812 F.3d 127 (D.C. Cir. 2016) .................................................. 37, 38

Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp.,
    549 U.S. 422 (2007) ..........................................................................18

Travelers Indem. Co. v. Bailey,
    557 U.S. 137 (2009) ..........................................................................24

United States v. Navarro,
    No. 23-5062, Order (D.C. Cir. Apr. 12, 2023).................................46

United States v. United Mine Workers of Am.,
    330 U.S. 258 (1947) ..........................................................................49

VoteVets Action Fund v. U.S. Dep't of Veterans Affs.,
    992 F.3d 1097 (D.C. Cir. 2021) .......................................................13

**Statutes**

28 U.S.C. § 1291 ..................................................................... 17, 20

28 U.S.C. § 1330.............................................................. 1, 4, 9, 29

28 U.S.C. § 1602 ...........................................................................9

28 U.S.C. § 1603 ........................................... 4, 9, 15, 29, 36, 37, 38

28 U.S.C. § 1604 ...........................................................................9

28 U.S.C. § 1605 ........................................... 1, 2, 4, 6, 9, 30, 35, 36, 38

28 U.S.C. § 1606................................................................................ 5, 9, 45

28 U.S.C. § 1607................................................................................ 9, 29

28 U.S.C. § 1608........................................................................ 1, 9, 11, 16

28 U.S.C. § 1610................................................................................ 2, 5, 9

28 U.S.C. § 1611.......................................................................................9

## Rules

D.C. Circuit Rule 26.1 .............................................................................. vii

Fed. R. Civ. P. 60.....................................................................................10

Federal Rule of Appellate Procedure 26.1 ............................................... vii

## Other Authorities

Black's Law Dict. 1158 (5th ed. 1979)...................................................49

*H.R. Rep. No. 94-1487 (1976)......................................................... 42, 44

Mark B. Feldman, *Cultural Property Litigation and the Foreign Sovereign Immunities Act of 1976: The Expropriation Exception to Immunity*, 3 ABA Sec. Int'l L. 9 (2011) ...............................................................44

Robert B. von Mehren, *The Foreign Sovereign Immunities Act of 1976,* 17 Colum. J. Transnat'l L. 33 (1978) ...................................................43

*Statement Announcing United States Policy on Economic Assistance and Investment Security in Developing Nations*, The Am. Presidency Project (Jan. 19, 1972).......................................42

Authorities upon which we chiefly rely are marked with asterisks.

# **GLOSSARY**

| | |
|---|---|
| **Chabad** | Agudas Chasidei Chabad of United States |
| ***Chabad I*** | *Agudas Chasidei Chabad of U.S. v. Russian Fed'n*, 528 F.3d 934 (D.C. Cir. 2008) |
| ***Chabad II*** | *Agudas Chasidei Chabad of U.S. v. Russian Fed'n,* 19 F.4th 472 (D.C. Cir. 2021) |
| **Defendants or Russia** | All defendants collectively, including the Russian Federation, Russian Ministry of Culture and Mass Communication, Russian State Library, and Russian State Military Archive |
| **FSIA** | Foreign Sovereign Immunities Act, codified in relevant part at 28 U.S.C. §§ 1330, 1602-1611 |
| **JSC-Tenex** | Joint Stock Company Techsnabexport, corporate parent of Tenex-USA, Inc. |
| **Momorandum or Mem. Op.** | The district court's Memorandum Opinion dated February 27, 2023. |
| **Russia** | All defendants, including the Russian Federation, the Russian Ministry of Culture and Mass Communication, the Russian State Library, and the Russian Military Archive. |
| **Tenex-USA** | Tenex-USA, Inc. |
| **Tenex Br.** | Appellant Tenex-USA's Opening Brief |
| **VEB** | State Development Bank VEB.RF |

## JURISDICTIONAL STATEMENT

As this Court has previously held, the district court had jurisdiction over Chabad's claims against Russia in this case pursuant to 28 U.S.C. § 1330 and § 1605(a)(3). *See Chabad I*, 528 F.3d 934, 939 (D.C. Cir. 2008). However, this Court does not have jurisdiction over Tenex-USA's appeal.

Chabad filed a post-judgment motion in the district court for permission to attach, or register judicial liens on, Russian assets in the United States that are owned or controlled by appellant Tenex-USA's corporate parent, JSC Techsnabexport ("JSC-Tenex"). Tenex-USA opposed Chabad's motion on several grounds, including that Chabad had not provided notice to Russia of the pending sanctions proceedings through diplomatic channels.

On February 27, 2023, the district court entered an order denying Chabad's motion without prejudice, and directing Chabad to serve Russia pursuant to the procedures set out in the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. § 1608. JA___(Order, ECF No. 267). Shortly thereafter, Chabad initiated service in accordance with the statutory protocol. *See, e.g.*, JA___(Certificate of Clerk, May 4, 2023, ECF No. 282).

Although the district court denied Chabad's motion without prejudice on grounds of inadequate service, Tenex-USA has asked this Court to review issues not addressed in the district court's order, including "the portion of [the district

1

court's] Order and Memorandum Opinion entered on February 27, 2023 denying Tenex-USA's jurisdictional immunity arguments under the Foreign Sovereign Immunities Act, 28 U.S.C. §§ 1605(a)(3), 1610(a)(3)." JA__(Notice of Appeal, ECF No. 274). The statutory provisions Tenex-USA cites concern, respectively, a sovereign's immunity from suit, and a sovereign's immunity from attachment of assets. Tenex-USA's appeal is directed to points discussed in the district court's Memorandum Opinion, but not addressed in the district court's order.

Chabad moved to dismiss the appeal on several grounds, including: (i) the principle that this Court reviews orders, not opinions; and (ii) the district court's order was not immediately appealable under the collateral order doctrine. This Court denied Chabad's motion, referred the issues raised to the merits panel, and instructed the parties to address appellate jurisdiction on appeal. Order, *Agudas Chasidei Chabad of U.S. v. Russian Fed'n*, No. 23-7036, (D.C. Cir. Aug. 10, 2023).

Tenex-USA has the burden to establish this Court's jurisdiction over its appeal. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) ("It is to be presumed that a cause lies outside this limited jurisdiction, … and the burden of establishing the contrary rests upon the party asserting jurisdiction"). Tenex-USA's opening brief pays lip service to the issue of appellate jurisdiction, but does not address the key issues Chabad had raised in its motion to dismiss.

Tenex Br. at 1-3, 49-52. As Chabad explains further in Part I of its Argument,

Tenex-USA has not met its burden to establish this Court's jurisdiction.

## PERTINENT STATUTES

Tenex-USA has included statutes and other materials in the addendum to its brief. Of central importance for purposes of this appeal are the following provisions of the Foreign Sovereign Immunities Act ("FSIA"):

### 28 U.S.C. § 1330 (a)

(a) The district courts shall have original jurisdiction without regard to amount in controversy of any nonjury civil action against a foreign state as defined in section 1603(a) of this title as to any claim for relief in personam with respect to which the foreign state is not entitled to immunity either under sections 1605–1607 of this title or under any applicable international agreement.

### 28 U.S.C. § 1603

For purposes of this chapter—

(a) A "foreign state", except as used in section 1608 of this title, includes a political subdivision of a foreign state or an agency or instrumentality of a foreign state as defined in subsection (b).

### 28 U.S.C. § 1605(a)(3)

(a) A foreign state shall not be immune from the jurisdiction of courts of the United States or of the States in any case—

…

(3) in which rights in property taken in violation of international law are in issue and that property or any property exchanged for such property is present in the United States in connection with a commercial activity carried on in the United States by the foreign state; or that property or any property exchanged for such property is owned or operated by an agency or instrumentality of the foreign state and that agency or instrumentality is engaged in a commercial activity in the United States[.]

4

**28 U.S.C. § 1606**

As to any claim for relief with respect to which a foreign state is not entitled to immunity under section 1605 or 1607 of this chapter, the foreign state shall be liable in the same manner and to the same extent as a private individual under like circumstances; but a foreign state except for an agency or instrumentality thereof shall not be liable for punitive damages; if, however, in any case wherein death was caused, the law of the place where the action or omission occurred provides, or has been construed to provide, for damages only punitive in nature, the foreign state shall be liable for actual or compensatory damages measured by the pecuniary injuries resulting from such death which were incurred by the persons for whose benefit the action was brought.

**28 U.S.C. § 1610 (a)(3)**

(a) The property in the United States of a foreign state, as defined in section 1603(a) of this chapter, used for a commercial activity in the United States, shall not be immune from attachment in aid of execution, or from execution, upon a judgment entered by a court of the United States or of a State after the effective date of this Act, if—

…

(3) the execution relates to a judgment establishing rights in property which has been taken in violation of international law or which has been exchanged for property taken in violation of international law[.]

## <u>STATEMENT OF THE ISSUES</u>

1.  Does this Court have appellate jurisdiction to hear Tenex-USA's appeal from the district court's Order, which denied Chabad's motion to attach Tenex-USA's assets without prejudice on the ground that Chabad had not served documents relating to the district court's money judgments pursuant to the FSIA's diplomatic protocols?

2.  Assuming, *arguendo*, that this Court has jurisdiction to hear Tenex-USA's appeal, is Tenex-USA's challenge to the district court's jurisdiction barred by this Court's 2008 ruling that the district court had jurisdiction over Chabad's claims, given the "doctrine of jurisdictional finality" – *i.e.*, the rule that "principles of res judicata apply to jurisdictional determinations – both subject matter and personal." *Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 n.9 (1982); *Durfee v. Duke*, 375 U.S. 106, 113 (1963) (discussing the doctrine).

3.  If Tenex-USA's appeal survives the jurisdictional and *res judicata* hurdles, should this panel overturn *Chabad I*'s straightforward application of 28 U.S.C. § 1605(a)(3), the FSIA provision that strips "foreign states," including both sovereign states and their instrumentalities, from immunity for unlawful expropriation claims?

6

4.  If the Court decides that it has jurisdiction to hear this appeal, is the Tenex-USA property at issue immune from attachment under 28 U.S.C. § 1610(a)(3), which expressly allows attachment of property in support of a judgment that "relates to" the unlawful expropriation of property?

## STATEMENT OF THE CASE

## I.    RUSSIA'S EXPROPRIATION OF THE CHABAD COLLECTION[4]

Chabad is a religious organization founded in 1775 in the Russian town of Lubavitch.  Over the following century and a half, Chabad compiled a library of sacred texts, referred to as the "Library."  Chabad also collected and preserved manuscripts, organizational records and correspondence, and other religious and historical materials, referred to as the "Archive."  The Library and the Archive are referred to collectively as the "Collection."

In the early 1920s, during the Bolshevik Revolution in Russia, the Soviet government condemned Chabad's religious and secular leader (the Rebbe) to death for establishing Jewish schools – an activity that the Soviet government classified as "counter revolutionary activities."  The Rebbe and his followers escaped from Russia, but they had to leave the Library behind. The Soviet government

---

[4]     This section is drawn from the detailed discussion of the Chabad Collection and its expropriation found in this Court's decision in *Chabad I,* 528 F.3d 934, 938-39, 942-46.

confiscated the Library, and placed it in the Lenin State Library of the Union of Soviet Socialist Republics, the predecessor of defendant Russian State Library.

Chabad relocated, eventually settling in Poland. Some members of Chabad, including the Rebbe, escaped the slaughter that followed the German and Soviet invasions of Poland in 1939, and were able to relocate to America. Chabad had to leave the Archive behind. The Nazi government seized the Archive when it occupied Poland, and moved the Archive to a castle in Silesia. The Soviet Army took possession of the Archive as war booty when it occupied Germany at the end of World War II. The Soviet Army placed the Archive in the custody of defendant Russian Military Archive.

Following the collapse of the Soviet Union, in 1991, Chabad sought return of the Collection (the Library and Archive) through legal channels in Russia. Although the highest judicial authorities in Russia ruled in Chabad's favor and ordered that the Collection be returned to Chabad, the Russian Federation refused. It took direct control of the Collection, and retains possession to this day. *Chabad I*, 528 F.3d at 938-39, 943-46.

## II.    CHABAD'S LAWSUIT AGAINST RUSSIA FOR RETURN OF THE COLLECTION

In 2004, Chabad filed a lawsuit against the Russian Federation, the Russian Ministry of Culture and Mass Communication, the Russian State Library, and the Russian Military Archive (collectively, "Russia"). Chabad invoked the Foreign

8

Sovereign Immunities Act ("FSIA") (codified at 28 U.S.C. §§ 1330, 1602-1611), and claimed that Russia had expropriated the Collection in violation of international law, citing 28 U.S.C. § 1605 (a)(3) (a "foreign state" is not immune from claims for property taken in violation of international law).

Russia filed a motion to dismiss, asserting immunity for all defendants under the FSIA, and raising other defenses. As to Russia's immunity defense, the district court granted Russia's motion as to the Library, and denied the motion as to the Archive. *Agudas Chasidei Chabad of U.S. v. Russian Fed'n*, 466 F. Supp. 2d 6, 31 (D.D.C. 2006), *aff'd in part, vacated in part, rev'd in part,* 528 F.3d 934 (D.C. Cir. 2008) (*Chabad I*). Chabad and Russia both appealed. This Court rejected Russia's sovereign immunity claims, and upheld the district court's jurisdiction over Chabad's claims in their entirety. *Chabad I*, 528 F.3d at 939, 955 ("We therefore affirm the judgment of the district court finding jurisdiction over Agudas Chasidei Chabad's claims concerning the Archive; we reverse its finding of Russia's immunity as to the Library claims based on the events of 1917-1925 and 1991-1992.").

On remand, Russia filed a notice withdrawing from the lawsuit. JA__(Statement of Defs., ECF No. 71). Following further proceedings, the district court entered a default judgment against Russia ordering the return of the Collection. *Chabad*, 729 F. Supp. 2d at 148. When Russia refused to comply with

the district court's order, the court imposed sanctions on Russia in the amount of $50,000 per day payable to Chabad, and authorized Chabad to begin discovery to identify attachable assets. *Chabad*, 798 F. Supp. 2d at 263; *Chabad*, 915 F. Supp. 2d at 150. At Chabad's request, the district court later reduced the accumulated sanctions to a monetary judgment. *Chabad*, 128 F. Supp. 3d at 249.

The district court periodically has issued revised monetary judgments reflecting the total amount of the accrued contempt sanctions. The most recent judgment, issued January 13, 2023, was for $178.8 million. JA___(Order Granting Revised Judgment, ECF No. 263).

## III. CHABAD'S EFFORTS TO IDENTIFY AND ATTACH RUSSIAN ASSETS

Having in hand the district court's final judgment requiring return of the Collection, and a money judgment for accrued sanctions, Chabad served subpoenas on Tenex-USA. Tenex-USA moved to quash the subpoena, and the district court denied the motion. Tenex-USA then filed a motion under Fed. R. Civ. P. 60(b) to re-open the judgment on grounds that the district court lacked subject matter jurisdiction. The district court denied the motion. On appeal from that decision, this Court affirmed, holding that under Rule 60(b) only a party or its legal representative may seek relief from a final judgment, and that Tenex-USA does not purport to be either. *Chabad II*, 19 F.4th at 477.

10

Back in the district court, Chabad filed a motion for leave to attach (or to file judicial liens on) assets in the United States owned by Tenex-USA's parent, JSC-Tenex.  Tenex-USA opposed the motions on several grounds, including: (i) that the district court lacked subject matter jurisdiction over the Russian Federation; (ii) that Tenex-USA's assets do not qualify for attachment under the FSIA; and (iii) that Chabad had not properly served Russia with the district court's money judgments according to FSIA's protocols, 28 U.S.C. § 1608.

By order dated February 27, 2023, the district court *denied* Chabad's motion without prejudice on the sole ground that Chabad's previous service of certain documents relating to the district court's sanctions and money judgments did not comply with § 1608.  The district court directed Chabad to proceed with service, which Chabad has done.  JA ___(Certificate of Clerk, May 4, 2023, ECF No. 282).  Service was effected by the United States Department of State on October 11, 2023.  JA__(Affidavit of Service, ECF No. 285).

In its accompanying memorandum, the district court addressed Tenex-USA's other arguments.  As to the district court's jurisdiction, the district court wrote: "At the risk of belaboring the point, this Court still has subject-matter jurisdiction because a 2008 panel of the D.C. Circuit held as much in [*Chabad I*] and the Circuit has never overruled that holding."  JA__(Mem. Op. 11, ECF No. 268).  On the question of attachment immunity, the district court construed the

11

relevant FSIA provision, 28 U.S.C. § 1610(a)(3), and held that the proposed

execution on Tenex-USA's property "relates to a judgment establishing rights in

property which has been taken in violation of international law," as the statute

requires. JA__(*Id.* at 13-15).

However, the district court reserved judgment on the question of whether the

proposed attachment satisfied the other statutory requirements, pending service on

Russia in accordance with the district court's order. JA__(*Id*. at 22). The question

of whether attachment of Tenex-USA's assets would be appropriate in this case

remains an open question.

## IV.    TENEX-USA'S NOTICE OF APPEAL

On March 27, 2023, Tenex-USA filed a notice of appeal from "the portion

of this Court's Order and Memorandum Opinion entered on February 27, 2023

denying Tenex-USA's jurisdictional immunity arguments under the Foreign

Sovereign Immunities Act, 28 U.S.C. §§ 1605(a)(3), 1610(a)(3)." JA__(Notice of

Appeal, ECF No. 274). The first provision, § 1605(a)(3), concerns the district

court's subject matter jurisdiction. As noted above, this Court has already rejected

Tenex-USA's jurisdictional challenge, holding that Tenex-USA does not have

standing to challenge the underlying judgment. *Chabad II,* 19 F.4th at 474. The

second provision, § 1610(a)(3), is directed to whether Tenex-USA's assets are

immune from attachment. As discussed above, the district court did not

12

conclusively address that issue. Both of these points are relevant to this Court's appellate jurisdiction, as discussed below.

## V.     VEB'S APPEAL

To repeat a point noted earlier, appellant VEB has adopted Tenex-USA's arguments in this appeal. Chabad therefore addresses Tenex-USA's arguments in this brief, with the understanding that they apply to VEB, *mutatis mutandis*.

## STANDARD OF REVIEW

Because Tenex-USA asked the district court to dismiss this proceeding on jurisdictional and other grounds, the Court must address the facts as set out by the plaintiff, with reasonable inferences drawn in plaintiff's favor. *VoteVets Action Fund v. U.S. Dep't of Veterans Affs.*, 992 F.3d 1097, 1102 (D.C. Cir. 2021). This Court reviews a district court's legal conclusions *de novo*. *Huisha-Huisha v. Mayorkas*, 27 F.4th 718, 726-27 (D.C. Cir. 2022).

## SUMMARY OF ARGUMENT

1. This Court lacks jurisdiction over this appeal. As an initial matter, Tenex-USA purports to raise on appeal issues that the district court addressed in its Memorandum, but not in its Order. The appeal thus violates the rule that this Court reviews orders, but not opinions. Separately, this Court lacks jurisdiction over Tenex-USA's appeal of the district court's holding that it has jurisdiction over Chabad's claims. This Court already ruled in *Chabad II* that Tenex-USA lacks

13

standing to lodge a post-judgment challenge against the district court's jurisdiction. *Chabad II*, 19 F.4th at 477. As to the attachment immunity issue, the district court did not "conclusively resolve" whether Chabad could attach Tenex-USA's property, and this Court therefore lacks jurisdiction to review that issue under the collateral order doctrine. *See* Section I, below.

2. If this Court decides that it has jurisdiction to hear this appeal, Tenex-USA's jurisdictional arguments are barred by the "doctrine of jurisdictional finality" – that is, the principle that *res judicata* applies to jurisdictional issues as much as to the merits. In this case, the Russian Federation and the other defendants all moved to dismiss Chabad's complaint, on jurisdictional and other grounds, and they lost. Then they withdrew from the case, and the district court entered a final judgment by default. Tenex-USA's appeal thus raises a jurisdictional issue that merged into the district court's judgment, and Tenex-USA may not re-litigate that issue. *See* Section II, below.

3. If Tenex-USA overcomes the jurisdictional and *res judicata* hurdles, then this Court will have to decide the proper interpretation of 28 U.S.C. § 1605(a)(3). According to the plain language of that provision, if a plaintiff shows a taking of its property in violation of international law, and either of two alternative "commercial nexus" tests is met, then the "foreign state" is stripped of its sovereign immunity from suit. The FSIA defines "foreign state" to mean the

14

foreign sovereign *and* its instrumentalities.  28 U.S.C. § 1603(a).  Applying these provisions in 2008, this Court held in *Chabad I* that the district court had jurisdiction over Chabad's claims against the defendants, including the Russian Federation.  Thirteen years later, in *Chabad II,* this Court noted the same point, noting "the district court['s] confirm[ation] that its denial of immunity to the Russian Federation had been affirmed by this court in *Chabad I*[.]"  19 F.4th at 475.  Tenex-USA rests its appeal on decisions in other cases decided in the period between the *Chabad I* and *Chabad II* decisions that did not follow the statutory language as Congress enacted it.  *See* Section III, below.

4.  Tenex-USA argues that the district court improperly construed 28 U.S.C. § 1610(a)(3).  That provision allows attachment of a sovereign's property located in the United States if the property "relates to" a judgment regarding unlawful expropriation.  Tenex-USA argues, first, that the district court's order directing Russia to return Chabad's property violates § 1610(a)(3)'s territorial requirement, but that requirement relates to attachment, not to the district court's jurisdiction or remedy.  As Chabad explained to the district court and confirms again, the property Chabad seeks to attach is in the United States.  Second, the district court correctly held that its judgment for accrued sanctions "relates to" the underlying judgment of unlawful expropriation.  Indeed, Tenex-USA concedes that the purpose of contempt sanctions is to coerce a party into compliance with an underlying court

15

order.  So here:  the coercive aspect of the district court's contempt sanctions against Russia establishes a direct link between the sanctions award and the order to return Chabad's property, and thus satisfies § 1610(a)(3)'s "relates to" requirement.  *See* Section IV, below.

## **ARGUMENT**

### I.     THIS COURT DOES NOT HAVE JURISDICTION TO HEAR TENEX-USA'S APPEAL

#### A.     Tenex-USA Has Improperly Raised Issues Not Addressed in the District Court Order on Appeal

The District Court's Order on appeal states in relevant part:

> For the reasons stated in the Court's memorandum opinion filed this same date, it is hereby **ORDERED** that plaintiffs [235] Motion to Attach Property or, in the Alternative, to Register Judicial Liens is **DENIED WITHOUT PREJUDICE**. The Court **DIRECTS** plaintiff to serve defendants [with specified documents], in compliance with the manner prescribed for service in 28 U.S.C. § 1608[.]

JA____(Order, ECF No. 267).  There is no indication that the district court intended to incorporate into the Order any other issues it discussed in its Memorandum, and the Order certainly does not address immunity in any express terms.

As things stand, Tenex-USA appeals from a district court order *in its favor*, and raises issues on appeal that the district court addressed in the Memorandum accompanying its Order, but that it did not address in the Order itself.

16

Tenex-USA's appeal flies in the face of at least two well-established principles of appellate review. First, "It is well established that in cases on appeal from the district court, we are to review judgments, not opinions." *Harvey v. District of Columbia*, 798 F.3d 1042, 1056 (D.C. Cir. 2015) (internal quotation marks and citation omitted). Second, "[a] party may not appeal from a judgment or decree in his favor, for the purpose of obtaining a review of findings he deems erroneous which are not necessary to support the decree." *Elec. Fittings Corp. v. Thomas & Betts Co.*, 307 U.S. 241, 242 (1939) (citation omitted). In sum, "[a] district court speaks through orders and judgments, and only those decisions are reviewable." *Cioffi v. Gilbert Enters., Inc.*, 769 F.3d 90, 92 (1st Cir. 2014) (citations omitted).

Tenex-USA tries to dodge these rules on the ground that, because the district court's Order "denied Tenex-USA's immunity arguments under the FSIA . . . , [and 28 U.S.C.] § 1291 allows an immediate appeal of the order to address such issues." Tenex Br. at 1. More specifically, Tenex-USA says that it "is within its rights to appeal a dismissal without prejudice on the grounds that it wants dismissal with prejudice." Tenex Br. at 2 (internal quotation marks and citation omitted).

The district court's decision to rest its order on service issues rather than immunity issues was within proper bounds. In *Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp.*, the Supreme Court held that "a federal court has leeway to

17

choose among threshold grounds for denying audience to a case on the merits."

549 U.S. 422, 431 (2007) (internal quotation marks and citations omitted).  This

Court applied that principle in *Chalabi v. Hashemite Kingdom of Jordan*, 543 F.3d

725, 728 (D.C. Cir. 2008), finding it appropriate for the district court to make a

determination on a statutes of limitation issue before resolving foreign sovereign

immunity questions.  Here, the district court opted to dismiss Chabad's motion

without prejudice on procedural grounds.  None of the immunity issues Tenex-

USA raises is ripe for appeal.

 The rule that appellate courts review orders not opinions has a sound

rationale.  When a district court addresses an issue in its order, it confirms that it

has made a final ruling and the issue is ready for review.  The notion that a party

may appeal any and all issues on which the district court has expressed views

would allow an appellant to by-pass the district court, and ask the appellate court to

issue one or more interlocutory advisory opinions.  For example, in this case (as

explained in the following section), Tenex-USA is trying to re-litigate one issue on

which this Court has already ruled, and is asking this Court to rule for the first time

on a matter the district court expressly reserved for further proceedings.  Tenex-

USA's appeal should be dismissed on these grounds.

18

**B.    Neither of the Issues Tenex-USA Has Raised in Its Notice of Appeal is Open to Review**

As a separate ground for dismissal, the issues Tenex-USA raises are not properly before this Court.  As to the first issue – the district court's jurisdiction under 28 U.S.C. § 1605(a)(3) – this Court ruled in *Chabad II* that Tenex-USA does not have standing to challenge this issue.  As to "attachment immunity" under 28 U.S.C. § 1610(a)(3), this Court does not have jurisdiction to address that issue on interlocutory appeal, even under the collateral order doctrine.

**1.    Subject-Matter Jurisdiction**

In its Memorandum, the district court addressed Tenex-USA's "oft-defeated" arguments directed to the district court's jurisdiction over the Russian Federation.  JA__(Mem. Op. 9-13, ECF No. 268).  Indeed, by the district court's count, that court and this Court "have addressed the issue of jurisdiction under the expropriation jurisdiction exception [28 U.S.C § 1605(a)(3)] five separate times." JA__(*Id.* at 9).  In light of this history, the question is whether Tenex-USA may appeal this issue once again.

The answer is no.  In an earlier appeal, Tenex-USA raised the same arguments under 28 U.S.C. § 1605(a)(3) that it raises in this appeal.  This Court held that Tenex-USA lacks standing to challenge the district court's final judgment against Russia on jurisdictional grounds.  Under applicable rules, only a party or its legal representative may raise a post-judgment challenge to a district court's

19

jurisdiction, and Tenex-USA "did not participate in any way in the underlying 2004 litigation resulting in the judgments it seeks to have vacated" and does not "make a plausible argument that it is even currently proceeding as the legal representative of the Russian Federation." *Chabad II,* 19 F.4th at 477.

Tenex-USA now wants to do an end-run around *six* prior opinions: the five opinions the district court identified, all upholding its jurisdiction in this case, and the sixth decision holding that Tenex-USA has no standing to challenge those prior rulings. Tenex-USA, in effect, is saying that it can have multiple bites at the apple simply by raising the same arguments over and over again in opposition to Chabad's motions, and then filing interlocutory appeals when the district court rejects them.

Tenex-USA has no more basis to challenge the district court's jurisdiction now than it did when this Court decided *Chabad II,* and its appeal on that issue should be dismissed.

### 2. Attachment Jurisdiction

This Court generally has jurisdiction only over "final decisions." 28 U.S.C. § 1291. Under the "collateral order doctrine," however, courts have recognized a "narrow class of appealable orders despite 'the absence of a final judgment.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 671-72 (2009) (quoting *Mitchell v. Forsyth,* 472

U.S. 511, 530 (1985)).  The district court did not render a final decision on attachment immunity, and its decision is not a reviewable collateral order either.

The Supreme Court has held that decisions denying claims to immunity may fall within the collateral order doctrine, and may be considered on interlocutory appeal, *only if* two additional criteria are met: the decision "must conclusively determine the disputed question," and that question "must involve a claim of right separable from, and collateral to, rights asserted in the action." *Mitchell,* 472 U.S. at 527 (internal quotation marks and citations omitted); *Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.,* 506 U.S. 139, 144 (1993). The district court's Order does not satisfy at least the first of these requirements – that is, it did not "conclusively determine the disputed question."

As the district court stated in its Memorandum, it did not reach the question of whether Chabad could proceed with the attachment of the Tenex-USA property at issue because (as the district court held) Chabad was required first to serve additional papers according to the FSIA's service scheme.  The fact that the district court addressed one aspect of Tenex-USA's immunity argument in its Memorandum is neither here nor there.  The operative point is that the district court did not hold that Chabad was entitled to attach the property in question, and therefore did not resolve the question of Tenex-USA's putative attachment

21

immunity. As noted, above, the district court expressly reserved that issue for another day. JA__(Mem. Op. 22, ECF No. 268).

The Eighth Circuit's decision in *Peterson v. Reisch*, 585 F.3d 1091 (8th Cir. 2009), is on point. In that case, the district court denied the defendants' motion to dismiss on grounds of qualified immunity without prejudice, pending the plaintiff's filing of an amended complaint. The defendants appealed, and the Eighth Circuit dismissed for lack of appellate jurisdiction on grounds that the district court did not "conclusively determine the disputed question." *Id*. at 1092-93. "Unlike in *Mitchell*, where there were 'simply no further steps that [could] be taken in the District Court to avoid the trial the defendant maintains is barred,' the district court has essentially reset the litigation at the pleading stage." *Id.* at 1093 (quoting *Mitchell*, 472 U.S. at 527).

 So too here. The district court denied Chabad's motion without prejudice, and conditioned further proceedings on Chabad's satisfaction of the specific FSIA service requirements and the refiling of its motion. The effect was to require Chabad to re-start the post-judgment attachment process. The district court did not authorize Chabad to take any action with respect to Tenex-USA's property, and thus did not deprive it of its purported immunity. Because the district court decision did not *conclusively resolve* the question of whether Chabad could

22

proceed to attach and/or seize the property at issue, this Court does not have jurisdiction to review that issue on interlocutory appeal.

## II. TENEX-USA'S CHALLENGE TO THE DISTRICT COURT'S JURISDICTION IS BARRED BY THE "DOCTRINE OF JURISDICTIONAL FINALITY"

In *Durfee v. Duke*, 375 U.S. 106 (1963), the Supreme Court confirmed that the basic rules of *res judicata* apply to decisions addressing subject matter jurisdiction. That is, a court is bound to follow a prior court's rulings on subject matter jurisdiction "when the second court's inquiry discloses that those questions have been fully and fairly litigated and finally decided in the court which rendered the original judgment." *Id.* at 111. The Supreme Court referred to this principle as the "doctrine of jurisdictional finality." *Id.* at 113.[5]

The Supreme Court reaffirmed the doctrine in *Ins. Corp. of Ireland, Ltd.*, 456 U.S. 694:

> A party that has had an opportunity to litigate the question of subject-matter jurisdiction may not, however, reopen that question in a collateral attack upon an adverse judgment. It has long been the rule that principles of res judicata apply to jurisdictional determinations – both subject matter and personal.

*Id.* at 702 n.9.

---

[5]     Chabad raised the jurisdictional finality issue expressly in the district court. JA__(Mot. to Attach 6, ECF No. 235). Although the district court did not refer to the jurisdictional finality doctrine (in those words) in its decision on appeal, it did hold that the jurisdictional question had been resolved in this Court's 2008 decision. JA__(Mem. Op. 11, ECF No. 268). *Res judicata* is an alternative ground for affirmance on this issue.

23

This Court has applied the jurisdictional finality doctrine in FSIA cases, beginning with *Practical Concepts, Inc., v. Republic of Bolivia*, 811 F.2d 1543 (D.C. Cir. 1987). Citing *Durfee*, this Court in *Practical Concepts* held that a party claiming sovereign immunity has a choice:

> A defendant who knows of an action but believes the court lacks jurisdiction over his person or over the subject matter generally has an election. *He may appear, raise the jurisdictional objection, and ultimately pursue it on direct appeal. If he so elects, he may* not *renew the jurisdictional objection in a collateral attack.* Should he proceed this way, he may defend on the merits in the district court without losing his right to press on direct review the jurisdictional objection, along with objections on the merits.
>
> Alternatively, the defendant may refrain from appearing, thereby exposing himself to the risk of a default judgment. When enforcement of the default judgment is attempted, however, he may assert his jurisdictional objection. If he prevails on the objection, the default judgment will be vacated. If he loses on the jurisdictional issue, on the other hand, his day in court is normally over; as a consequence of deferring the jurisdictional challenge, he ordinarily forfeits his right to defend on the merits.

*Id.* at 1547 (emphasis added) (internal citations omitted).

This Court confirmed these principles in *Bell Helicopter Textron, Inc. v. Islamic Republic of Iran*, 734 F.3d 1175 (D.C. Cir. 2013):

> Where a defendant 'w[as] given a fair chance to challenge . . . subject-matter jurisdiction,' the issuing court's determination of jurisdiction is *res judicata* and may not be challenged in a collateral proceeding in the district court but only on direct appeal.

*Id.* at 1182 (alterations in original) (quoting *Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 153 (2009)).

24

In this case, Russia appeared in the district court and was represented by counsel.  It challenged the district court's jurisdiction, appealed the district court's partial denial of its motion, and lost in this Court.  *Chabad I,* 528 F.3d at 938-39.  Following remand, Russia then withdrew from the case, leaving this Court's decision intact.  *Chabad II*, 19 F.4th at 474.  The district court entered a final judgment from which Russia did not appeal.  Pursuant to *Practical Concepts* and *Bell Helicopter*, the district court's final judgment, including the underlying jurisdictional ruling, is not subject to collateral challenge.  Given that the Russian Federation would be barred from relitigating the issue, there is no basis for Tenex-USA's challenge on Russia's behalf (even if it had standing to do so).

That Tenex-USA might raise arguments different from Russia's, or even if (according to Tenex-USA) this Court's 2008 decision were wrong, that would not open this Court's prior jurisdictional ruling to collateral attack.

> A final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action. *Nor are the* res judicata *consequences of a final, unappealed judgment on the merits altered by the fact that the judgment may have been wrong or rested on a legal principle subsequently overruled in another case.*

*Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 398-99 (1981) (emphasis added and citations omitted).  This principle also applies in FSIA cases.  *See, e.g., GSS Grp. Ltd. v. Nat'l Port Auth. of Liberia*, 822 F.3d 598, 608 (D.C. Cir. 2016) ("[O]nce an *issue* is raised and determined, it is the entire *issue* that is precluded,

25

not just the particular arguments raised in support of it in the first case" (emphasis in original and citation omitted)).

Tenex-USA says that it may raise the Russian Federation's immunity because "the Russian Federation's own immunity under § 1605(a)(3) remained completely unaddressed." Tenex Br. at 32. Setting aside whether that is correct (it's not, as explained below), the point is irrelevant. As cases like *Federated Department Stores* and *Bell Helicopter* confirm, *res judicata* bars the re-litigation after final judgment of any claim or defense that was *or that could have been raised* in the prior proceeding. In this case, there is no doubt that the Russian Federation raised numerous defenses to the district court's jurisdiction, and that the Russian Federation could have raised additional jurisdictional arguments. That it chose not to is neither here nor there.

The Supreme Court confirmed this point just three years ago in a unanimous decision that addressed the application of *res judicata* principles during post-judgment enforcement proceedings. In *Lucky Brand Dungarees, Inc. v. Marcel Fashions Grp., Inc.*, 140 S. Ct. 1589 (2020), the Court considered application of *res judicata* to an affirmative defense, and offered the following illustration:

> Take, for example, cases that involve either judgment enforcement or a collateral attack on a prior judgment. In the former scenario, a party takes action to enforce a prior judgment already issued against another; in the latter, a party seeks to avoid the effect of a prior judgment by bringing a suit to undo it. If, in either situation, a different outcome in the second action "would nullify the initial

26

judgment or would impair rights established in the initial action," preclusion principles would be at play. In both scenarios, courts simply apply claim preclusion or issue preclusion to prohibit a claim or defense that would attack a previously decided claim.

*Id.* at 1597 (internal citations omitted).

That is precisely the situation here. Chabad seeks to enforce the district court's judgments. Tenex-USA seeks to nullify the judgments by asserting a defense that the Russian Federation raised (or could have raised). Under *Lucky Brands,* Tenex-USA's efforts to (re)-assert an affirmative defense on the Russian Federation's behalf are barred.

As the district court recognized in its Memorandum: "At the risk of belaboring the point, this Court still has subject matter jurisdiction because a 2008 panel of the D.C. Circuit held as much in [*Chabad I*] and the Circuit has never overruled that holding." JA__(Mem. Op. 11, ECF No. 268). The district court's recognition that its jurisdiction over Chabad's claims has been litigated, and cannot be revisited by collateral attack, was correct and should be upheld.

### III.   THE PANEL DECISION IN *CHABAD I* EXPRESSLY AND CORRECTLY REJECTED THE RUSSIAN FEDERATION'S SOVEREIGN IMMUNITY DEFENSE

If—and only if—this Court decides that Tenex-USA has overcome the jurisdictional and *res judicata* hurdles discussed above, then this Court must address Tenex-USA's central contentions: (i) that no court has yet decided the question of the Russian Federation's sovereign immunity in this case, and (ii) this

Court must therefore follow later decisions that (according to Tenex-USA) adopted a reading of the FSIA's expropriation exception that forecloses suit against the Russian Federation.  Tenex Br. at 25-38.  As Tenex-USA frames the key issue: "[N]either the District Court in its 2006 decision on the motion to dismiss, nor this Court in *Chabad I* considered § 1605(a)(3)'s elements as to the Russian Federation's own immunity[.]"  *Id.* at 31.

A close and fair reading of the *Chabad I* decision shows that Tenex-USA's position is wrong.  The *Chabad I* panel manifestly applied the statute according to its plain text, and with respect to all defendants including the Russian Federation. As the district court held in its Memorandum, the district court "still has subject-matter jurisdiction because a 2008 panel of the D.C. Circuit held as much in [*Chabad I*] and the Circuit has never overruled that holding."  JA __(Mem. Op. 11, ECF No. 268).  Then, in *Chabad II,* this Court recounted the same history, and noted that the district court had "confirmed that its denial of immunity to the Russian Federation had been affirmed by this court in *Chabad I*[.]"  19 F.4th at 475.  Tenex-USA's argument that no court has addressed the Russian Federation's immunity is just wrong.

Tenex-USA wants to revisit this issue yet again.  The following sections provide a brief overview of the relevant FSIA provisions, the *Chabad I* decision, and the later decisions on which Tenex-USA relies.

28

### A.    Overview of the FSIA's Expropriation Exception

The FSIA sets out the terms and conditions under which the district courts have jurisdiction to hear a claim against a "foreign state."  The statute defines "foreign state" to "include[] a political subdivision of a foreign state or an agency or instrumentality of a foreign state[.]"  28 U.S.C. § 1603(a).

The statute thus defines "foreign state" to include *both* the sovereign entity (*e.g.,* the Russian Federation), and its instrumentalities (*e.g.,* the other defendants in this case).  All of the defendants in this case – the Russian Federation included – fall within § 1603(a)'s definition of "foreign state."

The FSIA grants federal district courts jurisdiction over actions against "*a foreign state as defined in section 1603 (a)* of this title as to any claim for relief . . . with respect to which the foreign state is not entitled to immunity either under [28 U.S.C. §§ 1605-1607]…."  28 U.S.C. § 1330 (emphasis added).  The district courts therefore have jurisdiction over a "foreign state" – that is, *both* the sovereign state *and* its instrumentalities – if any exception to immunity in § 1605 applies.

The exceptions to sovereign immunity set out in § 1605 provide for exceptions to the sovereign immunity of a "foreign state," and thus describe the circumstances in which a district court has jurisdiction over a "foreign state" pursuant to § 1330.  As the preamble to § 1605(a) states, "A *foreign state* shall not be immune from the jurisdiction of courts of the United States or of the States in

29

any case . . ." in which an exception applies (emphasis added).  Congress's use of the defined term "foreign state" in § 1605(a) confirms again that the exceptions deprive both the sovereign *and* its instrumentalities of immunity.

In this case, Chabad invoked § 1605's "expropriation exception" to immunity, § 1605 (a)(3).  That section provides:

(a) A ***foreign state*** shall not be immune from the jurisdiction of courts of the United States or of the States in any case –

\*\*\*

(3) *in which rights in property taken in violation of international law are in issue* **and**

that property or any property exchanged for such property is present in the United States in connection with a commercial activity carried on in the United States by the foreign state; **or**

that property or any property exchanged for such property is owned or operated by an agency or instrumentality of the foreign state and that agency or instrumentality is engaged in a commercial activity in the United States[.]

28 U.S.C. § 1605 (a)(3) (reformatted, emphases added).

The expropriation exception thus strips a "foreign state" of its immunity if two separate requirements are met.  *First*, as shown in the italicized portion of § 1605(a)(3) above, the claimant must show that it has rights in property taken in violation of international law.  *Second*, as shown in the underlined portion of § 1605(a)(3), the claimant must satisfy a "commercial nexus" requirement.  There appears to be no dispute that Chabad has satisfied the "unlawful taking

30

requirement." The issue Tenex-USA raises concerns the commercial nexus requirement.

As indicated by the statute's use of the word "or," the two commercial nexus tests are alternative, meaning that the commercial nexus requirement is satisfied if *either* of the tests is met. The first test asks whether the expropriated property is in the United States and is being used for a commercial purpose. The second test asks whether the expropriated property is in the possession of a sovereign's instrumentality, and whether the instrumentality is engaged in commercial activity in the United States.

In other words, the nexus between the United States and the "foreign state" is met by showing *either*: (1) property has been expropriated unlawfully, and that property is in the United States; or (2) property has been expropriated unlawfully, and that property is in the hands of an instrumentality that has commercial contact with the United States. If the outcome of approach (1) <u>or</u> (2) is affirmative, then the statute grants the district court's jurisdiction over the "foreign state," including *both* the foreign sovereign and its instrumentalities.

Applied to this case, there is no dispute as to the unlawful expropriation of Chabad's property. Therefore, under the plain terms of § 1605(a)(3), if *either* of the two commercial nexus tests is met, the district court had jurisdiction over *both* the Russian Federation and its instrumentalities.

### B.     The *Chabad I* Panel Decision

Tenex-USA's main immunity argument is that the *Chabad I* panel,

intentionally or out of neglect, somehow failed to address the immunity of the first-

named and main defendant in this case, the Russian Federation itself.  Tenex Br. at

31 ("[N]either the District Court in its 2006 motion to dismiss, nor this Court in

*Chabad I* considered § 1605(a)(3)'s elements as to the Russian Federation's own

immunity[.]").  That position is contrary both to what the panel *said,* and how the

panel *ruled.*  In fact, the panel's decision shows that it applied the relevant

provisions of the FSIA according to their terms, and correctly concluded that the

district court had jurisdiction over the "foreign state" defendants – both the

Russian Federation *and* the instrumentality defendants.[6]

At the outset of its analysis, the *Chabad* panel defined the term "Russia" to

mean all defendants, including the Russian Federation.  *Chabad I,* 528 F.3d at 939

(discussing "defendants," which are "all collectively referred to as 'Russia' except

as needed to distinguish among them").  The panel explained that "Russia,"

meaning all defendants, had moved to dismiss in the district court, and that

"Russia" had appealed from those aspects of the district court's decision that were

---

[6]     Judge Henderson disagreed with Part I.A. of the panel decision.  *Chabad I,*
528 F.3d at 955.  The relevant portion of the panel decision for present purposes is
Part I.B, 528 F.3d at 942-50.  *See* Tenex Br. at 32 (citing pages within this range).
It appears that all three panel members subscribed to Part I.B.

adverse. *Id*. The panel said nothing to suggest that Russia's motion, much less the portions of its motion based on sovereign immunity and FSIA jurisdiction, applied only to certain defendants, excluding the Russian Federation itself.

In its discussion of the statute's "unlawful expropriation" requirement, the panel took pains (as it had promised) to refer to the individual defendants, including the Russian Federation itself, when it referred to a specific entity. *Id.* at 945-46. Importantly, the panel referred to the Russian Federation itself, and not just the instrumentalities, when it addressed the unlawful takings that underlay Chabad's claims. For example, the panel described the 1991-92 re-expropriation of the Library by the Russian Federation's Deputy Chief Arbiter. The panel also discussed the involvement of the Russian Federation's Supreme Soviet in the unlawful taking. *Id*.

These references establish two important points: (1) the panel fulfilled its promise to use the term "Russia" to mean all defendants, and to identify individual defendants by name when it was referring only to those entities; and (2) the panel cited the Russian Federation itself, separate and apart from its instrumentalities, with complicity in the offenses underlying Chabad's claims. For present purposes the main point is this: given the panel's recognition that Chabad's claim rested on the conduct of the Russian Federation itself, Tenex-USA's suggestion that the

panel's decision did not address the Russian Federation's immunity makes no sense.

The panel concluded its decision by affirming the district court as to the Archive claim, and "revers[ing] [the district court's] finding of *Russia's* immunity as to the Library claims[.]"  *Chabad I*, 528 F.3d at 955 (emphasis added).  As noted above, the panel had defined "Russia" to include the Russian Federation, and had addressed the Russian Federation's complicity in the unlawful expropriation of Chabad's sacred property.  The decision offers no reason to doubt that the panel's conclusion as to the district court's jurisdiction over "Russia" included the Russian Federation as well as its instrumentalities.

Tenex-USA focuses on the panel's discussion of the statute's commercial nexus provisions.  Tenex Br. at 31-32.  Tenex-USA misreads the panel's decision on that issue.

The panel began by annotating the statutory text to label the unlawful expropriation and commercial nexus requirements (labelled **[A]** and **[B]**), and the two alternative commercial nexus tests (labelled **[1]** and **[2]**):

> (a) A foreign state shall not be immune from the jurisdiction of courts of the United States or of the States in any case —
>
> . . .
>
> (3) in which **[A]** rights in property taken in violation of international law are in issue and **[B][1]** that property or any property exchanged for such property is present in the United

34

> States in connection with a commercial activity carried on in the United States by the foreign state; or **[2]** that property or any property exchanged for such property is owned or operated by an agency or instrumentality of the foreign state and that agency or instrumentality is engaged in a commercial activity in the United States[.]

*Chabad I,* 528 F.3d at 940 (quoting and annotating 28 U.S.C. § 1605(a)(3)) (emphasis added). The panel also noted that this provision strips a "foreign state," including the Russian Federation, of its sovereign immunity. *Id.* at 929. As discussed above, the panel identified the Russian Federation as a culprit with respect to **[A]**, the unlawful taking requirement.

Referring to the text labelled **[1]** and **[2]**, the panel then addressed "the existence of one or the other of two possible 'commercial activity' nexi between the United States and the defendants." *Id.* at 940; *see also id.* at 946 (referring to "the two clauses specifying alternative commercial activity requirements"). The panel recognized that the alternative "commercial nexus" tests turn on the conduct of different entities. Test **[1]** looks to the activities of the "foreign state" – that is, the sovereign state and/or its agencies and instrumentalities. *Id.* at 947. Test **[2]** refers to the activities of the agencies and instrumentalities only. *Id.* The *Chabad I* panel concluded that Chabad had satisfied the second commercial nexus alternative, **[B][2].** *Chabad I*, 528 F.3d at 948 ("Thus § 1605 (a)(3)'s second alternative commercial activity requirement is plainly satisfied.").

35

Once a claimant shows that the § 1605(a)(3) requirements are met, the statute strips the "foreign state" of its immunity.  As noted, the panel therefore concluded that "Russia" – meaning all defendants, including the Russian Federation – had failed to establish immunity from suit.  The panel simply followed the language of § 1605(a).  Nothing in the statute or in the *Chabad I* decision suggests that the panel misread the statute, misapplied the statute, or meant to exclude the Russian Federation from that decision.

The fact that the panel focused on the activities of the Russian instrumentalities in its discussion of alternative **[2]** is neither surprising nor helpful to Tenex-USA's case.  The panel considered the instrumentalities' activities because commercial nexus test **[2]** turns on the instrumentalities' activities.  That the panel considered only the instrumentalities' *activities*, however, does not mean that it considered only the instrumentalities' *immunity*.  Whether a claimant satisfies option **[1]** or **[2]**, the result is the same:  the "foreign state" – that is, the sovereign *and* its instrumentalities – is subject to the jurisdiction of U.S. courts. *See* 28 U.S.C. §§ 1603(a) and 1605(a).

Having concluded that Chabad had satisfied commercial nexus test **[2]**, the *Chabad I* panel correctly concluded that the "foreign state" – meaning all of the defendants, including the Russian Federation – were not immune from suit and the district court had jurisdiction to hear Chabad's claims.

### C.    Later D.C. Circuit Panel Decisions

Eight years after *Chabad I,* a panel of this Court addressed § 1605(a)(3) in *Simon v. Republic of Hungary*, 812 F.3d 127, 146 (D.C. Cir. 2016).  The panel in *Simon* began its analysis of the expropriation exception to immunity as follows: "We turn finally to § 1605(a)(3)'s commercial-activity nexus requirements. The nexus requirement differs somewhat for claims against the foreign state itself (*e.g.,* Hungary) as compared with claims against an agency or instrumentality of the foreign state (*e.g.,* MÁV)." *Id.* (citing *Chabad I,* 528 F.3d at 947).  The panel then said that commercial nexus test **[1]** applies to the foreign state's immunity, and test **[2]**, applies only to the instrumentality's immunity.  *Id.*  The panel did not provide any basis for its statement that the different nexus tests apply to different entities, *i.e.,* that the results of the tests lead to different jurisdictional outcomes.

Respectfully, the panel in *Simon* made two key errors.

*First*, the *Simon* panel does not appear to have considered the statutory text – or, if it did, it did so both *sub silentio* and incorrectly.  The panel did not confront the fact that, once the expropriation exception is satisfied, the "foreign state" loses its immunity (§ 1605(a)), and that the defined term "foreign state" includes both the sovereign and its instrumentalities (§ 1603(a)).  Indeed, the panel incorrectly referred to Hungary as the "foreign state," and to the other defendant (MÁV) as an

37

instrumentality.  *Simon*, 812 F.3d. at 135, 146.  Under § 1603(a), both entities fall under the "foreign state" umbrella.

    *Second*, the *Simon* panel cited *Chabad I* for the proposition that the different commercial nexus tests apply to different entities.  *Simon*, 812 F.3d at 146 (citing *Chabad I,* 528 F.3d at 947).  But the page of *Chabad I* the *Simon* majority cited addresses a different point – that the statute provides different nexus *tests* based on different *activities.*  *Chabad I,* 528 F.2d at 947 ("the [first] clause applies to activities 'carried on *by the foreign state*' whereas the second clause involves the commercial activities of the foreign state's agencies and instrumentalities.").  The *Chabad I* panel never said that these tests lead to different *results,* or that the tests apply to different categories of *foreign states.*  To emphasize, the *Chabad I* panel never said, or suggested, that one nexus test leads to an immunity exception applicable to a foreign sovereign, and the other test leads to an exception applicable only to an agency or instrumentality.  Rather, the *Chabad I* decision upholding the district court's jurisdiction over "Russia" recognized that "[a] *foreign state* shall not be immune from the jurisdiction of courts of the United States[.]"  28 U.S.C. § 1605 (a)(3) (emphasis added).

    The *Simon* panel's misreading of *Chabad I* caused a problem in later cases.  *Chabad I* had decided that the second commercial nexus test had been met, and on that basis concluded that the district court had jurisdiction over the Russian

38

Federation and its instrumentalities.  The *Simon* panel decided that the second

commercial nexus test applies only to the instrumentalities' immunity, not the

sovereign's.  The panel in the next case, *de Csepel v. Republic of Hungary*, 859

F.3d 1094 (D.C. Cir. 2017), had to decide which approach was correct.

The *de Csepel* majority acknowledged that any inconsistency between the

*Chabad I* and *Simon* decisions meant that *Chabad I* should prevail.  *Id.* at 1105

("[I]n cases of intracircuit conflict we are bound to follow the earlier decision[.]").

The majority also recognized that the plain language of the statute strips immunity

from a "foreign state," including the sovereign itself, if either of the two

commercial nexus tests is satisfied.  *Id*. at 1107.  Nonetheless, the panel followed

*Simon*:

> The issue of the Russian state's immunity was completely
> unaddressed by the district court and neither raised nor briefed on
> appeal . . . . The [*Chabad I*] court, moreover, did not explain why it
> kept the Russian Federation in the case. In fact, we only know that it
> did because at the end of its opinion it stated "we reverse [the district
> court's] finding of Russia's immunity."

*Id*. at 1105 (quoting *Chabad I*, 528 F.2d at 955).  As noted above, the statement

that the *Chabad I* panel had not addressed the Russian Federation's immunity is

incorrect.

The *de Csepel* majority rested its decision primarily on its assessment of the

policies underlying the FSIA.  According to the panel, "[t]o conclude that the

foreign state [presumably meaning the sovereign, as opposed to the defined term]

39

loses its immunity if either clause is satisfied would produce an anomalous result .

. . . [T]he agencies or instrumentalities would fail to satisfy *either* of the

expropriation exception's two clauses if considered to be the relevant 'foreign

state' throughout the exception." *Id*. at 1107; *see also id.* at 1108 ("Collapsing the

well-worn [*sic*] distinction between foreign states and agencies and

instrumentalities would likewise lead to odd results."). This approach rests on

three distinct errors.

    *First*, the *de Csepel* majority's decision to follow *Simon* based on a judicial

assessment of the results in sovereign immunity cases flies in the face of Supreme

Court precedent. Three years before *de Csepel*, the Supreme Court admonished

lower courts to apply the FSIA as written, without regard for the statute's

underlying policy or effects. *Republic of Argentina v. NML Capital, Ltd.*, 573 U.S.

134, 145-46 (2014). In *NML,* Argentina noted a "gap in the statute," and cited

various policy and political consequences if the Supreme Court applied the statute

as written. Those arguments held no sway. The Supreme Court held that "the

riddle is not ours to solve (if it can be solved at all)." *Id.* at 145. Separately,

Argentina and the United States both cited "worrisome international-relations

consequences" if Argentina lost, but the Supreme Court referred those concerns to

"that branch of government with authority to amend the Act[.]" *Id.* at 146. The *de*

*Csepel* majority's decision to apply its own assessment of the statute's "odd" outcomes is inconsistent with the Supreme Court's instructions.

*Second*, the *de Csepel* majority's "odd result" is not odd at all.  The majority pointed out that "[b]ecause a foreign state would be amenable to suit whenever its agency or instrumentality is not immune, a plaintiff would be able to sue a foreign state with no commercial activity in the United States so long as the agency or instrumentality owning the property in issue is engaged in a commercial activity in the United States."  *de Csepel*, 859 F.3d at 1108.  Why is that odd?  Unlawful expropriations are conducted by, at the behest of, or under the authority of a foreign sovereign.  Therefore, Congress enacted a law that strips the foreign sovereign's immunity by either of two commercial nexus pathways.  Respectfully, no court should second-guess that decision.

Indeed, given the facts of *de Csepel*, the majority's decision in that case yields the "odd results."  The expropriation in question was the result of actions by "the Hungarian government and their Nazi collaborators," following which the Hungarian government turned stolen property over to its instrumentalities, including the Hungarian Museum of Fine Arts.  *Id.* at 1098.  Why is it "odd" to hold the Hungarian sovereign responsible for its conduct?  More to the point, why is it less odd to let the Hungarian sovereign off the hook because it chose to turn the war-loot over to one of its instrumentalities, especially when its instrumentality

41

enjoys the opportunity to engage in commercial activity in this country (and thus satisfies the second nexus test)?  Such a result provides a roadmap for any foreign sovereign that wishes to evade liability for an unlawful expropriation.  The *de Csepel* majority never explained why its result is preferable to Congress's.

     *Third,* the *de Csepel* panel's application of the commercial nexus provision is inconsistent with the FSIA's history and purpose.  The House Report accompanying the FSIA noted that the difference between the two nexus tests is whether the expropriated property is present in the United States or not.  Either test "would, in two categories of cases, deny immunity where 'rights in property taken in violation of international law are in issue.'"  H.R. Rep. No. 94-1487, at *19 (1976).  The difference is that, "[u]nder the second category, the property need not be present in connection with a commercial activity of the agency or instrumentality."  *Id.*  The effect on the sovereigns' immunity in both cases is the same.

     And of course, this makes perfect sense. At the time the FSIA was enacted, foreign expropriation of U.S. businesses abroad was a matter of major concern for the U.S. government.  *Statement Announcing United States Policy on Economic Assistance and Investment Security in Developing Nations*, The Am. Presidency Project (Jan. 19, 1972), https://www.presidency.ucsb.edu/ documents/statement-announcing-united-states-policy-economic-assistance-and-investment-security

("Statement").  Beginning with Fidel Castro's confiscation of American investments in businesses in 1959, and continuing with the expropriations of U.S. assets in Peru and Chile between 1968 and 1972, both the United States government in general, and Congress in particular, began to focus on how to provide appropriate remedies for such expropriations.

Since it was not uncommon for foreign states that expropriated U.S. businesses to transfer those properties to state enterprises (instrumentalities) that do business throughout the world, including in the United States, the second prong of § 1605 (a)(3) allowed U.S. entities whose property had been expropriated a pathway to bring a claim against a "foreign state" – *including the sovereign itself* – so long as the instrumentality engaged in commercial activity in the United States. As one scholar pointed out soon after the statute passed, because an expropriation is accomplished by a sovereign's "legislative or executive fiat," the second "commercial nexus" provision provides a means for obtaining jurisdiction over the sovereign "even though the property which was taken remained within the territory of the expropriating state."  Robert B. von Mehren, *The Foreign Sovereign Immunities Act of 1976,* 17 Colum. J. Transnat'l L. 33, 57-61 (1978).  These same principles have been applied to address a foreign state's expropriation of cultural as well as business property.  *See* JA__(Nov. 6, 2020 Mem. Op. 35-36, ECF No. 228) (citing Mark B. Feldman, *Cultural Property Litigation and the Foreign*

43

*Sovereign Immunities Act of 1976: The Expropriation Exception to Immunity*, 3 ABA Sec. Int'l L. 9, 11 (2011)).

In sum, as Congress explained, one purpose of the FSIA was, "for the first time in U.S. law, [to] provide a statutory procedure for making service upon, and obtaining in personam jurisdiction over, a foreign state. This would render unnecessary the practice of seizing and attaching the property of a foreign government for the purpose of obtaining jurisdiction." H.R. Rep. No. 94-1487, at *8 (1976).

### D.    Conclusion

The decision in *Chabad I* was based on the plain language of the FSIA, which provides for exceptions to immunity of a "foreign state" – the sovereign and its instrumentalities. *Chabad I* cited the statutory language, ruled as to all defendants, and got it right. The decision in *Simon* misread *Chabad I*, and did not apply the statutory text. The *de Csepel* majority was in a difficult position: it had to reconcile the two earlier decisions, but in doing so it again deviated from the statute's text and distorted the balance Congress adopted when it enacted the FSIA.

### IV.    THE DISTRICT COURT'S JUDGMENTS ARE AUTHORIZED BY, AND CONSISTENT WITH, THE FSIA AND PRECEDENT

In its final two arguments, Tenex-USA says that the district court's previous judgments violate the FSIA's territorial limitations (Tenex Br. at 40-43), and do not fall within one of the FISA's exceptions to sovereign "attachment immunity"

44

(*id.* at 43-48). As to the first argument, Tenex-USA improperly conflates two statutory provisions that address different aspects of sovereign immunity. As to the second, Tenex-USA's position is contrary to a key FSIA provision and D.C. Circuit precedent.

## A.    Chabad's Request to Attach Tenex-USA Property Does Not Violate a Territorial Limitation in the FSIA

Tenex-USA argues that the district court exceeded the FSIA's territorial limitations when it ordered Russia to return Chabad's unlawfully expropriated property. According to Tenex-USA, "The District Court's Sanctions Judgments are premised upon a turnover order that flouted the FSIA's territorial limitations and impermissibly ordered the Russian Defendants to surrender the disputed religious texts *which are located outside the United States.*" Tenex Br. at 41 (emphasis in original). The statute does not support Tenex-USA's position.

As an initial matter, the FSIA gives district courts great latitude to craft remedies in FSIA cases, including expropriation cases. Under 28 U.S.C. § 1606, in any case in which a foreign sovereign is not immune from suit, "the foreign state shall be liable in the same manner and to the same extent as a private individual under like circumstances[.]" Nothing in § 1606 imposes a territorial limit on the district court's remedies.

The district court's order directing Russia to return Chabad's sacred texts and other materials was an order in replevin – a well-known remedy in common

45

law in cases involving the return of property to its rightful owner.  *Fuentes v. Shevin,* 407 U.S. 67, 78 (1972) ("Replevin at common law was an action for the return of specific goods wrongfully taken or 'distrained.'"); *see also* Order, *United States v. Navarro*, No. 23-5062 (D.C. Cir. Apr. 12, 2023) ("Navarro has not adequately demonstrated that the United States cannot proceed under the replevin statute" to recover documents subject to the Presidential Records Act.).  Under § 1606, therefore, the district court had the authority to order Russia to return Chabad's property.

Likewise, 28 U.S.C. § 1605(a)(3) grants the district court jurisdiction over unlawful expropriation claims, without regard to the location of the property.

Thus, neither of the two FSIA provisions that matter – § 1605(a)(3) (the expropriation provision) and § 1606 (the remedies provision) – limits the district court's authority to property located in the United States, as Tenex-USA argues. Under these provisions, therefore, the district court had ample authority to order Russia to return the unlawfully expropriated property currently held in the Russian Federation.

In fact, Tenex-USA does not appear to rely on these provisions.  Rather, Tenex-USA relies on 28 U.S.C. § 1610(a)(3), which states  in relevant part:

> (a) The property in the United States of a foreign state, as defined in section 1603(a) of this chapter, used for a commercial activity in the United States, shall not be immune from attachment in aid of execution, or from execution, upon a judgment entered by a

46

court of the United States or of a State after the effective date of this
Act, if—

…

(3) the execution relates to a judgment establishing rights in
property which has been taken in violation of international law
or which has been exchanged for property taken in violation of
international law[.]

Tenex Br. at 40-41. This provision addresses the circumstances in which a foreign
state's property is subject to attachment in satisfaction of a judgment.  This has
nothing to do with whether a district court may order the return of property
unlawfully held overseas, as Tenex-USA contends.

Finally, for avoidance of doubt, as Chabad emphasized in its motion before
the district court, Chabad will ask the district court for permission to attach Tenex-
USA assets that are in the United States.  JA__(Mot. to Attach 2-4, ECF No. 235).
As Chabad explained in its motion, it is undisputed that Tenex-USA and/or its
parent own either stockpiles of uranium in the United States, or the proceeds from
sales of the stockpiles.  Attachment of that property in satisfaction of the district
court's judgments would not violate any territorial limitation in the FSIA.

### B. Chabad's Proposed Attachment of Russian Federation Assets "Relates to" the District Court's Judgment Ordering Return of Chabad's Property

Tenex-USA's final argument focuses on the district court's monetary
judgments against Russia for the accrued amount of contempt sanctions.  Tenex-

47

USA questions whether the district court has authority to enforce a contempt order, citing the requirement that an order of attachment "relate[] to a judgment establishing rights in property which has been taken in violation of international law," as required by § 1610(a)(3). Tenex Br. at 44 (quoting JA__(Mem. Op. 13-14, ECF No. 268). The district court held that Chabad's request to attach Russian property in the United States satisfied this requirement, but it did not authorize Chabad to attach any Russian property. Tenex-USA asks this Court to hold that the district court's interpretation of § 1610(a)(3) was incorrect. Tenex Br. at 44.

Tenex-USA recognizes that, under this Court's precedent, a district court may hold a foreign sovereign in contempt. Tenex Br. at 47 (citing *FG Hemisphere Assocs., LLC v. Democratic Republic of Congo,* 637 F.3d 373, 380 (D.C. Cir. 2011)). Tenex-USA argues, however, that issuance of a contempt order and enforcement of a contempt order are separate issues. There is no dispute, however, that the only restriction on the district court's authority to allow attachment of a foreign sovereign's property is § 1610. Tenex Br. at 48. This argument, therefore, merges into Tenex-USA's broader argument: that a judgment for accrued contempt sanctions does not "relate to" the district court's judgment establishing rights in property.

The district court relied on Webster's dictionaries, which define "relates to" to mean "to be connected with (someone or something)." JA__(Mem. Op. 14,

48

ECF No. 268).  Legal dictionaries give a similar definition.  BLACK'S LAW DICT.

1158 (5th ed. 1979) ("To stand in some relation; to have bearing or concern; to

pertain; refer; to bring into association with or connection with").  As the district

court correctly held, the contempt sanctions pertain to, or are associated with, the

underlying judgment ordering the return of the Library and Archive.  JA__(Mem.

Op. 15, ECF No. 268).

Tenex-USA does not offer an interpretation of "relates to" that would

preclude attachment based on a judgment of accrued sanctions.  In fact, Tenex-

USA effectively concedes that the district court was correct.  As Tenex-USA

acknowledges, district courts enter contempt sanctions "to coerce the contemnor

into compliance with the court's [underlying] order[.]"  Tenex Br. at 46 (citing,

*inter alia*, *United States v. United Mine Workers of Am.*, 330 U.S. 258, 303-04

(1947)).  By Tenex-USA's own understanding, therefore, a judgment for accrued

sanctions "relates to" the underlying order to return Chabad's property – indeed,

they are inextricably linked.

Tenex-USA says that the district court "ignored the distinction between civil

contempt sanctions and the monetary damages typically awarded for expropriation

claims[.]"  Tenex Br. at 45.  That point makes no sense.  If Congress had intended

that attachment against foreign sovereigns be limited only to judgments for

damages, it could have said so.  Instead, Congress allowed attachment that "relates

to a judgment" involving unlawfully expropriated property. Congress's use of the broader term "relates to" gives the district courts room, as in this case, to issue enforceable contempt orders for failure to follow a judgment directing the return of the property.

If more is needed, the Supreme Court has addressed the meaning of "relates to" when used in a statute. In *Dubin v. United States,* 599 U.S. 110 (2023), the Court held, "[t]hat the phrase refers to a relationship or nexus of some kind is clear. Yet the kind of relationship required, its nature and strength, will be informed by context." *Id*. at 119 (internal citations omitted). The Supreme Court then looked broadly to the structure and language of the statute in question to determine the precise limits of the term. *Id.* at 120-124. In the FSIA, Congress provided in 28 U.S.C. §§ 1606 and 1605(3) that, a judgment "relates to" a foreign taking, then the foreign state is liable to the same extent as a private individual.

In fact, this case shows why Congress would not have wanted to exempt contempt sanctions from a district court's enforcement authority. Tenex-USA concedes that an available remedy to unlawful expropriation is a damages award, and that the FSIA authorizes attachment in satisfaction of that award. That may suffice for a run-of-the mill case involving commercial equipment or property. But what about a case, such as this one, that involves priceless, antique, and sacred religious materials comprising thousands of bound volumes and an even greater

50

number of documents, manuscripts, and correspondence?  Because the property at issue is unique and irreplaceable, not to mention of enormous religious and historic significance, damages would not suffice.  Basic principles of law and equity, as well as § 1606, allow a district court to issue an order directing the return of the property, as the district court did here.  By Tenex-USA's reading, however, the district court would be powerless to enforce its order.  The very fact that the property at issue is holy and priceless would mean that the claimant has no viable remedy, even though (as Tenex-USA concedes) attachment would be allowed if the property at issue were an ordinary piece of equipment.

None of the cases Tenex-USA cites is on point.  For example, Tenex-USA relies on *S & S Mach. Co. v. Masinexportimport*, 706 F.2d 411, 418 (2d Cir. 1983).  *See* Tenex Br. at 42.  In that case, the Second Circuit addressed a district court order directed to *pre*-judgment attachment of the Romanian government property.  The FSIA's special rules regarding pre-judgment attachment, 28 U.S.C. § 1610 (d), which have nothing to do with Chabad's request for post-judgment attachment.  *S & S Mach.* is irrelevant to the issues in this appeal.

In sum, the district court's money judgment for accrued sanctions "relates to" its underlying judgment directing the return of Chabad's Library and Archive.  Tenex's acknowledgment that the district court's contempt sanctions were intended to pressure Russia to comply with the district court's judgment shows a direct link

51

between the two.  Tenex-USA offers no reason why Congress would have

excluded the most egregious cases from the statute, yet Tenex's interpretation of

the "relates to" language in § 1610(a)(3) would yield that result.

## CONCLUSION

For the foregoing reasons, the consolidated appeals of VEB and Tenex-USA

should be dismissed for lack of appellate jurisdiction.  In the alternative, the

appeals should be dismissed on grounds of *res judicata* and the doctrine of

jurisdictional finality.  Finally, if this Court reaches the merits of Tenex-USA's

appeal, the district court's decision should be affirmed.

Respectfully submitted,

Dated:  November 15, 2023

*/s/  Robert P. Parker*
Robert P. Parker (D.C. Bar No. 404066)
Steven Lieberman (D.C. Bar No. 439783)
Paul S. Macri (D.C. Bar No. 90005192)
ROTHWELL, FIGG, ERNST & MANBECK, P.C.
901 New York Ave., N.W., Suite 900 East
Washington, D.C. 20001
Telephone:  202-783-6040
Facsimile:  202-783-6031
Emails:  rparker@rfem.com
            slieberman@rfem.com
            pmacri@rfem.com

*Counsel for Plaintiff-Appellee*
*Agudas Chasidei Chabad of United States*

## <u>CERTIFICATE OF COMPLIANCE</u>

This document complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B).  This brief contains 11,901 words (as calculated by the automatic word count function of Microsoft Word), excluding the parts of the brief exempted by Fed. R. App. P. 32(f) and D.C. Cir. R. 32(e)(1).

This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5)(A) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word 2010, in 14-point Times New Roman font.

*/s/  Robert P. Parker*
Robert P. Parker (D.C. Bar No. 404066)
ROTHWELL, FIGG, ERNST & MANBECK, P.C.
901 New York Ave., N.W., Suite 900 East
Washington, D.C. 20001
Telephone:  202-783-6040
Facsimile :  202-783-6031
Email:  rparker@rfem.com

*Counsel for Plaintiff-Appellee*
*Agudas Chasidei Chabad of United States*

53

# ADDENDUM

## <u>PERTINENT STATUTES AND OTHER AUTHORITIES</u>

Except for the following, all applicable statutes and rules are contained in the Brief for Movant-Appellant.

**Statutes**

28 U.S. Code § 1330 .........................................................................ADD-1

28 U.S. Code § 1602 .........................................................................ADD-1

## 28 U.S. Code § 1330 - Actions against foreign states

(a) The district courts shall have original jurisdiction without regard to amount in controversy of any nonjury civil action against a foreign state as defined in section 1603(a) of this title as to any claim for relief in personam with respect to which the foreign state is not entitled to immunity either under sections 1605–1607 of this title or under any applicable international agreement.

(b) Personal jurisdiction over a foreign state shall exist as to every claim for relief over which the district courts have jurisdiction under subsection (a) where service has been made under section 1608 of this title.

(c) For purposes of subsection (b), an appearance by a foreign state does not confer personal jurisdiction with respect to any claim for relief not arising out of any transaction or occurrence enumerated in sections 1605–1607 of this title.

## 28 U.S. Code § 1602 – Findings and declaration of purpose

The Congress finds that the determination by United States courts of the claims of foreign states to immunity from the jurisdiction of such courts would serve the interests of justice and would protect the rights of both foreign states and litigants in United States courts. Under international law, states are not immune from the jurisdiction of foreign courts insofar as their commercial activities are concerned, and their commercial property may be levied upon for the satisfaction of judgments rendered against them in connection with their commercial activities. Claims of foreign states to immunity should henceforth be decided by courts of the United States and of the States in conformity with the principles set forth in this chapter.

## CERTIFICATE OF SERVICE

I hereby certify that on this 15th day of November, 2023, a true and correct copy of the foregoing document was served through the CM/ECF system on the following counsel of record for Appellants Tenex-USA, Incorporated and State Development Corporation VEB.RF:

Carolyn B. Lamm
Nicolle Kownacki
Ena Cefo
WHITE & CASE LLP
701 Thirteenth St., N.W.
Washington, DC 20005
Telephone: (202) 626-3600
Facsimile: (202) 639-9355
clamm@whitecase.com
nkownacki@whitecase.com
ena.cefo@whitecase.com

Wesley W. Whitmyer, Jr.
Whitmyer IP Group LLC
600 Summer St.
Stamford, CT 06901
Telephone: 203-703-0800
Facsimile: 203-703-0801
litigation@whipgroup.com

David C. Tobin
Tobin, O'Connor & Ewing
5335 Wisconsin Ave., N.W., Suite 700
Washington, DC 20015
Telephone: 202-362-5900
Facsimile: 202-362-6579
dctobin@tobinoconnor.com

1

I further certify that on this 15th day of November, 2023, a true and correct copy of the foregoing document was served by First-Class International Mail, through the U.S. Postal Service, on the following parties:

Ministry of Justice of the Russian Federation
Attn: Hon. Konstantin Chuychenko, Minister
14 Zhitnaya Street
GSP-1 Moscow, Russia 119991

Ministry of Culture of the Russian Federation
Attn: Hon. Olga Lyubimova, Minister
7/6, Bldg. 1,2, Malyy Gnezdnikovskiy Pereulok
Moscow, Russia 125993

Russian State Military Archive
Attn: Vladimir N. Kyzelenkov, General Director
29 Admirala Makarova Street
Moscow, Russia 125212

Russian State Library
Attn: Vadim Valerievich Duda, General Director
3/5, Vozdvizhenka Street, 2nd Entrance
Moscow, Russia 119019

*/s/  Robert P. Parker*
Robert P. Parker (D.C. Bar No. 404066)
ROTHWELL, FIGG, ERNST & MANBECK, P.C.
901 New York Ave., N.W., Suite 900 East
Washington, D.C. 20001
Telephone:  202-783-6040
Facsimile :  202-783-6031
Email:  rparker@rfem.com

*Counsel for Plaintiff-Appellee*
*Agudas Chasidei Chabad of United States*

2