# No. 23-7036

### Consolidated with No. 23-7037

## United States Court of Appeals
## for the District of Columbia Circuit

◆

AGUDAS CHASIDEI CHABAD OF UNITED STATES,

*Plaintiff-Appellee,*

- v. -

RUSSIAN FEDERATION; RUSSIAN MINISTRY OF CULTURE AND MASS
COMMUNICATION; RUSSIAN STATE LIBRARY; AND RUSSIAN STATE MILITARY
ARCHIVE,

*Defendants-Appellees,*

TENEX-USA, INCORPORATED,

*Appellant.*

◆

## ON APPEAL FROM THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

◆

### FINAL REPLY BRIEF OF
### APPELLANT TENEX-USA, INC.

Carolyn B. Lamm
Nicolle Kownacki
Jacqueline L. Chung
Ena Cefo
**WHITE & CASE** LLP
701 Thirteenth Street, NW
Washington, DC 20005
(202) 626-3600
clamm@whitecase.com

January 5, 2024                    *Counsel for Appellant*

# TABLE OF CONTENTS

**Page(s)**

TABLE OF CONTENTS.................................................................... i

TABLE OF AUTHORITIES ............................................................ iii

SUMMARY OF ARGUMENT ........................................................... 1

STATUTES AND OTHER AUTHORITIES ...................................... 3

ARGUMENT ...................................................................................... 3

    I.    This Court Has Jurisdiction Over Tenex-USA's Appeal.................... 3

        A.    Tenex-USA Has Appealed the 2023 Order .............................. 4

        B.    *Chabad II*'s Interpretation of Rule 60(b) Has No Application Here ...................................................................... 7

        C.    The District Court's Conclusions on Tenex-USA's Attachment Immunity Arguments Are Immediately Appealable.............................................................................. 8

    II.    The District Court Lacks Subject-Matter Jurisdiction Over the Underlying Dispute Against the Russian Federation, and "Jurisdictional Finality" Does Not Preclude Tenex-USA's Challenge on This Point ......................................... 11

        A.    Under *Owens* and *Practical Concepts*, This Court Reviews Successive Immunity Challenges to Default Judgments.............................................................................. 11

        B.    *Chabad I* Never Considered the Russian Federation's Own Immunity Under § 1605(a)(3)'s Territorial Nexus Clause.............................................................................. 17

        C.    This Court's Precedents in the Germany and Hungary Cases Correctly Interpreted § 1605(a)(3) ................................ 21

    III.    The District Court's Extraterritorial Turnover Order Violates the FSIA ................................................................................ 24

    IV.    The Default Sanctions Judgments Arise from a Civil Contempt Order and Not a "Judgment Establishing" the Type of "Rights in Property" Set Forth in § 1610(a)(3) ................... 27

i

CONCLUSION .................................................................................. 29

CERTIFICATE OF COMPLIANCE.................................................. 31

CERTIFICATE OF SERVICE ......................................................... 32

SECOND ADDENDUM OF PERTINENT STATUTES, RULES,
AND OTHER AUTHORITIES………………………………………..…1a

# TABLE OF AUTHORITIES

Page(s)

## CASES

*Agudas Chasidei Chabad of U.S. v. Russian Fed'n*
   *("Chabad II")*,
   19 F.4th 472 (D.C. Cir. 2021)......................................................7, 8, 9

*Agudas Chasidei Chabad of U.S. v. Russian Fed'n*
   *("Chabad I")*,
   528 F.3d 934 (D.C. Cir. 2008) .................................................. 18-19

*Ambar v. Fed. Republic of Germany*,
   596 F. Supp. 3d 76 (D.D.C. 2022)....................................................28

*Aurelius Capital Partners, LP v. Republic of Argentina*,
   584 F.3d 120 (2d Cir. 2009) ............................................................8

*Briscoe v. Fine*,
   444 F.3d 478 (6th Cir. 2006) ...................................................... 3-4

*Chalabi v. Hashemite Kingdom of Jordan*,
   543 F.3d 725 (D.C. Cir. 2008)...................................................... 6-7

*\*de Csepel v. Republic of Hungary ("de Csepel")*,
   859 F.3d 1094 (D.C. Cir. 2017)................................... 2, 12, 19, 21-23

*Durant, Nichols, Hous., Hodgson, & Cortese-Costa, P.C. v. Dupont*,
   565 F.3d 56 (2d Cir. 2009) ............................................................16

*Elec. Fittings Corp. v. Thomas & Betts Co.*,
   307 U.S. 241 (1939)........................................................................5

*\*El Paso Natural Gas Co. v. United States*,
   750 F.3d 863 (D.C. Cir. 2014)..................................................1, 3, 4

*Federated Dep't Stores v. Mottie*,
   452 U.S. 394 (1981)......................................................................15

*FG Hemisphere Assocs. v. Democratic Republic of Congo*,
   637 F.3d 373 (D.C. Cir. 2011)..................................................28, 29

*FG Hemisphere Assocs. v. Republique du Congo*,
455 F.3d 575 (5th Cir. 2006) ...................................................9

*First Nat'l City Bank v. Banco Para El Comercio Exterior de Cuba*,
462 U.S. 611 (1983) ...................................................23

*Flame S.A. v. Freight Bulk Pte. Ltd.*,
807 F.3d 572 (4th Cir. 2015) ...................................................16

*Guevara v. Republic of Peru*,
608 F.3d 1297 (11th Cir. 2010) ...................................................16

*GSS Group v. National Port Auth. of Liberia*,
822 F.3d 598 (D.C. Cir. 2016) ...................................................15

*Hardy Expl. & Prod. (India) v. Gov't of India*,
314 F. Supp. 3d 95 (D.D.C. 2018) ...................................................26

*In re Grand Jury Subpoena*,
912 F.3d 623 (D.C. Cir. 2019) ...................................................28

*La Reunion Aerienne v. Socialist People's Libyan Arab Jamahiriya*,
533 F.3d 837 (D.C. Cir. 2008) ...................................................9, 10

*Lucky Brand Dungarees, Inc. v. Marcel Fashions Grp., Inc.*,
140 S. Ct. 1589 (2020) ................................................... 16-17

*Obaydullah v. Obama*,
609 F.3d 444 (D.C. Cir. 2010) ...................................................10

*\*Owens v. Republic of Sudan*,
864 F.3d 751 (D.C. Cir. 2017) ...................................................1, 13-15, 20-21

*Owens v. Republic of Sudan*,
174 F. Supp. 3d 242 (D.D.C. 2016) ...................................................14

*Peterson v. Reisch*,
585 F.3d 1091 (8th Cir. 2009) ...................................................10

*Philipp v. Fed. Republic of Germany ("Philipp")*,
894 F.3d 406 (D.C. Cir. 2018) ...................................................19

*Practical Concepts, Inc. v. Republic of Bolivia*,
   811 F.2d 1543 (D.C. Cir. 1987) .................................................1, 11, 15

*Ranger Cellular v. FCC*,
   348 F.3d 1044 (D.C. Cir. 2003) .........................................................21

*Rubin v. Islamic Republic of Iran*,
   637 F.3d 783 (7th Cir. 2011) ..............................................................9

*S&S Machinery Co. v. Masinexportimport*,
   706 F.2d 411 (2d Cir. 1983) ......................................................... 25-26

*Schubarth v. Fed. Republic of Germany ("Schubarth")*,
   891 F.3d 392 (D.C. Cir. 2018) ...........................................................19

*Simon v. Republic of Hungary ("Simon")*,
   812 F.3d 127 (D.C. Cir. 2016) ......................................................2, 19

*Simon v. Republic of Hungary ("Simon II")*,
   77 F.4th 1077 (D.C. Cir. 2023) ...........................................................3

*Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp.*,
   549 U.S. 422 (2007) ..........................................................................6

*Steel Co. v. Citizens for a Better Env't*,
   523 U.S. 83 (1998) ...........................................................................13

*TIG Ins. Co. v. Republic of Argentina*,
   967 F.3d 778 (D.C. Cir. 2020) ................................................. 5-6, 25

*United States v. Adesida*,
   129 F.3d 846 (6th Cir. 1997) .............................................................16

*Verlinden B.V. v. Cent. Bank of Nigeria*,
   461 U.S. 480 (1983) ..........................................................................20

*Walters v. Indus. & Commer. Bank of China*,
   651 F.3d 280 (2d Cir. 2011) ..............................................................29

*Wye Oak Tech., Inc. v. Republic of Iraq*,
   24 F.4th 686 (D.C. Cir. 2022) ...........................................................13

# STATUTES AND RULES

28 U.S.C. § 1291 .................................................................... 1, 8-9

28 U.S.C. § 1603 ..................................................................... 22-23

*28 U.S.C. § 1605(a)(3) ......................... 1, 2, 13, 17, 18, 19, 20, 21, 22, 23, 24, 25

28 U.S.C. § 1606 ................................................................23, 24, 25, 28

28 U.S.C. § 1608 .................................................................7, 20, 23

28 U.S.C. § 1609 ......................................................................25

28 U.S.C. § 1610 ...................................................................1, 23, 25

*28 U.S.C. § 1610(a)(3) ............................................................ 2, 27-29

28 U.S.C. § 1610(c) ...............................................................5-6, 7-8, 27

Fed. R. Civ. P. 60(b) ..................................................................7

# OTHER

Brief for the United States as Amicus Curiae,
  *Philipp v. Fed. Republic of Germany*,
  141 S. Ct. 188 (2020) (Nos. 19-351, 19-520) ....................................22

*Brief for the United States as Amicus Curiae,
  *de Csepel v. Republic of Hungary* ("2018 U.S. Amicus"),
  No. 17-1165 (Dec. 4, 2018) ...................................................... 22-24

Brief for the United States as Amicus Curiae,
  *Kingdom of Spain v. Cassirer*,
  No. 10-786 (May 27, 2011) .....................................................22

Brief for the United States as Amicus Curiae,
  *Garb v. Republic of Poland*,
  440 F.3d 579 (2d Cir. 2004) (No. 02-7844) ....................................22

Order, *Philipp v. Fed. Republic of Germany*,
  No. 1:15-cv-00266 (D.D.C. July 30, 2019), ECF No. 40 ....................................3

*Authorities upon which Tenex-USA chiefly relies are marked with an asterisk.*

## SUMMARY OF ARGUMENT

Tenex-USA demonstrated in its Opening Brief ("Br.") that Chabad's Motion to Attach suffered from uncurable deficiencies under the FSIA, 28 U.S.C. §§ 1330, 1602 *et seq.* Specifically, the District Court lacked jurisdiction and authority under 28 U.S.C. §§ 1605(a)(3) and 1610 to even reach the question of attachability of Tenex-USA's property in satisfaction of Chabad's Sanctions Judgments. For this reason, the District Court should have denied Chabad's Motion with prejudice.

In its appellee brief ("Chabad Br."), Chabad fails to address the primary reason this Court has appellate jurisdiction: Tenex-USA "is within its rights" to appeal the District Court's order denying Chabad's Motion *without prejudice* on the ground that denial *with prejudice* is required. *El Paso Natural Gas Co. v. United States*, 750 F.3d 863, 885 (D.C. Cir. 2014). The three issues Tenex-USA raises in this interlocutory appeal are properly before this Court under 28 U.S.C. § 1291 and the collateral-order doctrine.

Turning to the merits, Chabad's contentions as to "jurisdictional finality" and *res judicata* misapply the applicable framework under *Practical Concepts, Inc. v. Republic of Bolivia*, 811 F.2d 1543 (D.C. Cir. 1987), and *Owens v. Republic of Sudan*, 864 F.3d 751 (D.C. Cir. 2017). Because the specific issue of the Russian Federation's own immunity was not addressed in the 2006 and 2008 decisions on the Russian Defendants' motion to dismiss, and the final judgment on the Russian

1

Federation's immunity was entered only in the 2010 *default proceeding* (notably, without addressing the immunity issue Tenex-USA raises here), Tenex-USA may challenge subject-matter jurisdiction now to resist enforcement of the default sanctions judgments against its assets.

Under this Court's precedents in *Simon* and *de Csepel*, there is no basis for exercising subject-matter jurisdiction over the Russian Federation in this case. And Chabad's request for reconsideration of those decisions is inappropriate in a brief before this Panel. In any event, Chabad's interpretation of § 1605(a)(3) is misguided, as confirmed by several panels of this Court and the United States.

As regards attachment immunity, Chabad misapprehends Tenex-USA's objection to the turnover order, which is that the order violates the FSIA's territorial limits by ordering the Russian Federation to surrender property located within its own borders. That U.S. courts have the power in some circumstances to issue injunctive relief against foreign states does not mean the courts' injunctive powers extend all over the world.

*Finally*, Chabad's argument that the Sanctions Judgments satisfy § 1610(a)(3)'s narrow exception to attachment immunity rests on an improperly broad interpretation of the statute.

## STATUTES AND OTHER AUTHORITIES

Pertinent statutes and authorities are included in the addendums to this brief and Tenex-USA's Opening Brief.

## ARGUMENT

## I.   This Court Has Jurisdiction Over Tenex-USA's Appeal

As Tenex-USA explained (Br. 2-3), it "is within its rights to appeal" an order denying relief "without prejudice" on the grounds that it wants a denial "with prejudice." *El Paso*, 750 F.3d at 885; *see also Briscoe v. Fine*, 444 F.3d 478, 495-96 (6th Cir. 2006) (upholding appellate jurisdiction where dismissal without prejudice gave a party "only a part of what it sought" and resulted in the possibility of further litigation).  Because "the allegation of other facts . . . could not possibly cure the deficienc[ies]" in Chabad's Motion to Attach (*see* Br., Argument § I), the appropriate relief below was a denial of Chabad's motion *with prejudice*, at least as to Chabad's request to attach purported assets of the Russian Federation.  *See Simon II*, 77 F.4th at 1109 (quotation marks omitted); *see also* Order, *Philipp v. Fed. Republic of Germany*, No. 1:15-cv-00266 (D.D.C. July 30, 2019), ECF No. 40 (because Germany was immune under the FSIA, dismissal with prejudice was required).

In other words, the 2023 Order gave Tenex-USA "only a part of what it sought" and explicitly invited the possibility of further litigation.  *Briscoe*, 444 F.3d

at 495-96; *see also* JA558 (noting that denying Chabad's motion without prejudice was "only a temporary reprieve").  In fact, Chabad's latest brief expressly *confirms* (at 47) that "Chabad will ask the district court for permission to attach Tenex-USA assets that are in the United States" in the future.[1]  Given this real and ongoing threat, Tenex-USA is well "within its rights" to seek from this Court a remand with instructions for the District Court to deny Chabad's motion *with prejudice*.  *El Paso*, 750 F.3d at 885.

### A.    Tenex-USA Has Appealed the 2023 Order

Chabad does not address *El Paso*, *Briscoe*, or *Simon II*.  Indeed, Chabad fails to cite even a single authority purporting to refute the notion that the Court has appellate jurisdiction where a party appeals an order denying a post-judgment motion *without* prejudice but seeks an order denying a post-judgment motion *with* prejudice.

Instead, Chabad bizarrely contends that Tenex-USA has appealed issues only discussed in (but not "necessary to") the District Court's Memorandum Opinion and that this "violates the rule that this Court reviews orders, but not opinions."  Chabad Br. 13, 17.  Chabad's argument fails for several reasons.

---

[1] Tenex-USA repeats its objection to Chabad's continued attempts to conflate Tenex-USA and its parent company.  *See, e.g.*, Chabad. Br. i-ii.

*First*, as noted, Tenex-USA has expressly appealed the 2023 Order, in particular the portion that issues a denial "without prejudice." Br. 8-9, 24-25, 52.

*Second*, Chabad (at 16) is flatly incorrect in asserting that "[t]here is no indication that the district court intended to incorporate into the Order any other issues [other than proper notice under § 1610(c)] it discussed in its Memorandum." In the *very first sentence* of the District Court's Order, the court incorporated the entire memorandum opinion by reference, stating: "[f]or the *reasons stated in the Court's memorandum opinion* filed this same date, it is hereby ORDERED that plaintiff's [Motion to Attach] is DENIED WITHOUT PREJUDICE." JA550 (emphasis added).

*Third*, appealing the 2023 Order (as Tenex-USA has done) necessarily permits Tenex-USA to challenge any rulings that were "necessary" to the order. Even the 85-year-old case that Chabad cites (at 17) acknowledges that a party may obtain review of an adverse holding that was "necessary" to a judgment in its favor. *See Elec. Fittings Corp. v. Thomas & Betts Co.*, 307 U.S. 241, 242 (1939).

Chabad (at 17-18) misapprehends that the immunity issues Tenex-USA raises were *necessary determinations*—and not mere "views"—antecedent to the District Court's decision that Chabad had failed to serve the Sanctions Judgments on the Russian Defendants. Before issuing a post-judgment order on attachment under § 1610(c), a court must have authority to enter the underlying judgment. *TIG Ins.*

*Co. v. Republic of Argentina*, 967 F.3d 778, 781 (D.C. Cir. 2020); *see also* Br. 7-8. Tenex-USA challenged the District Court's jurisdiction and authority under the FSIA to enter the Sanctions Judgments Chabad seeks to enforce, and the District Court therefore *first* had to assess whether the Russian Federation and its purported property were immune—*before* determining that attachment could not proceed under § 1610(c) because notice had not been satisfied. *See* JA555-557. The District Court's conclusions on the FSIA issues thus were as much a part of the Order that Tenex-USA appeals as the so-called "service issues."

Chabad's reliance (at 17-18) on *Sinochem* and *Chalabi*—to suggest that the District Court could have decided the Motion to Attach on "service" grounds *without* somehow first addressing its jurisdiction—is wholly unavailing. In *Sinochem International Co. v. Malaysia International Shipping Corp.*, the Supreme Court held that, in certain circumstances, a district court may properly dismiss a case on *forum non conveniens* grounds before addressing threshold jurisdictional issues. 549 U.S. 422, 432, 436 (2007) (underscoring, nevertheless, that if "a court can readily determine that it lacks jurisdiction over the cause or the defendant, the proper course would be to dismiss on that ground"). In *Chalabi v. Hashemite Kingdom of Jordan*, a panel of this Court similarly endorsed the notion that a statute of limitations that "plainly barred the claims" could be a basis for dismissing an action with prejudice before addressing a subject-matter jurisdiction challenge. 543 F.3d 725, 727-29

(D.C. Cir. 2008). Neither case concerned the proper sequencing of pre-judgment versus post-judgment issues.

Here, in contrast, the District Court could not reach the question of notice required for a *post-judgment* order under § 1610(c) before making threshold findings on its jurisdiction and authority to enter the judgment in the first place. Although § 1610(c)'s notice requirement references the service-of-process methods of 28 U.S.C. § 1608, that does not convert § 1610(c)'s notice requirement into some sort of threshold service-of-process issue that can be addressed interchangeably with issues of the court's jurisdiction to enter the judgment at all.

## B. *Chabad II*'s Interpretation of Rule 60(b) Has No Application Here

Chabad's reliance on *Chabad II* to challenge Tenex-USA's standing for this appeal is entirely misplaced and borderline misleading. As Chabad knows (*e.g.*, Chabad Br. 10), that decision rested on the panel's analysis of Tenex-USA as a potential *movant* under Federal Rule of Civil Procedure 60(b). *See Chabad II*, 19 F.4th at 477 (concluding that Tenex-USA was not a "party or its legal representative" within the meaning of Rule 60(b)). That narrow holding applying the text of Rule 60(b) is irrelevant here, where the question is whether Tenex-USA—the *target* of a post-judgment motion to attach its assets—can *oppose* such a motion on grounds of a lack of subject-matter jurisdiction and then appeal an adverse finding on such issue.

As the District Court correctly acknowledged before addressing Tenex-USA's FSIA challenges, "VEB and Tenex-USA raise [the lack of subject-matter jurisdiction] to oppose a motion that threatens assets held or controlled by them." JA559. Courts have correctly recognized that third parties whose assets are threatened may appeal § 1610(c) orders. *See, e.g.*, *Aurelius Capital Partners, LP v. Republic of Argentina*, 584 F.3d 120, 127 (2d Cir. 2009) (to have appellate standing, a nonparty whose assets are subject to a § 1610(c) motion need only "stat[e] a plausible affected interest"); Br. 49-52. Notably, Chabad does not argue (nor could it) that the issue of subject-matter jurisdiction underlying this case is not immediately appealable under § 1291. *Cf. Chabad II*, 19 F.4th at 476-77.

## C.    The District Court's Conclusions on Tenex-USA's Attachment Immunity Arguments Are Immediately Appealable

Finally, Chabad contends that Tenex-USA's two arguments on attachment immunity (*i.e.*, Tenex-USA's Issues Presented for Review, Nos. 2 and 3) are unappealable because, Chabad argues (at 21), "[t]he district court did not render a final decision on attachment immunity, and its decision is not a reviewable collateral order either." Chabad seems to imply that because the District Court failed to reach the issue of whether the property of Tenex-USA *specifically* was attachable, its rulings on Tenex-USA's two attachment-immunity defenses are not appealable. Chabad is incorrect.

As Tenex-USA explained (Br. 1), § 1291 allows an immediate appeal of immunity issues, including attachment immunity. *Chabad II*, 19 F.4th at 476-77; *Rubin v. Islamic Republic of Iran*, 637 F.3d 783, 790 (7th Cir. 2011) (collateral-order doctrine applied where the order "had the effect of denying a claim of attachment immunity under the FSIA"); *FG Hemisphere Assocs. v. Republique du Congo*, 455 F.3d 575, 584 (5th Cir. 2006) (holding same).

Contrary to Chabad's contention, Tenex-USA need not await an order holding its assets attachable to appeal the denial of its attachment-immunity defenses. The 2023 Order fails to deny Chabad's Motion to Attach with prejudice and therefore exposes Tenex-USA's assets to repeated threat of attachment to satisfy default judgments that infringe sovereign and attachment immunity. If, as here, there is an interlocutory order denying immunity arguments, that order is immediately appealable under the collateral-order doctrine. *See Rubin*, 637 F.3d at 790; *FG Hemisphere*, 455 F.3d at 584.

The collateral-order doctrine allows interlocutory appeals of orders that "[1] conclusively determine the disputed question, [2] resolve an important issue completely separate from the merits of the action, and [3] [are] effectively unreviewable on appeal from a final judgment." *La Reunion Aerienne v. Socialist People's Libyan Arab Jamahiriya*, 533 F.3d 837, 843 (D.C. Cir. 2008) (quotation marks omitted). Each requirement is satisfied here.

*First*, both of Tenex-USA's two attachment-immunity defenses were "conclusively determine[d]" because "there is no basis to suppose that the District [Court] contemplated any reconsideration of" its conclusions on those defenses. *Obaydullah v. Obama*, 609 F.3d 444, 447 (D.C. Cir. 2010) (upholding appellate jurisdiction under collateral-order doctrine) (quotation marks omitted). In this respect, Chabad's reliance (at 22) on *Peterson v. Reisch*, 585 F.3d 1091 (8th Cir. 2009), is misplaced. There, the Eighth Circuit held that it lacked appellate jurisdiction over an order denying without prejudice a motion for summary judgment on qualified-immunity grounds. But in that case, the district court's order also contemplated that the plaintiffs would amend their complaint and therefore *alter* the qualified-immunity analysis to be reviewed. Here, by contrast, no additional facts will change the District Court's rulings on Tenex-USA's two attachment-immunity defenses, and neither Chabad nor the District Court have suggested otherwise.

*Second,* resolution of Tenex-USA's attachment-immunity defenses will resolve threshold questions separate from the main "merits" issue of Chabad's motion, *i.e.,* whether *Tenex-USA's* assets specifically are subject to attachment.

*Third*, Tenex-USA's immunity defenses are "effectively unreviewable" if left for a later time. *La Reunion*, 533 F.3d at 843. That is to say, leaving these immunities issues unaddressed by this Court until some later veil-piercing or

attachment judgment is entered against Tenex-USA would undermine the very purpose of immunity and the collateral-order doctrine.

## II. The District Court Lacks Subject-Matter Jurisdiction Over the Underlying Dispute Against the Russian Federation, and "Jurisdictional Finality" Does Not Preclude Tenex-USA's Challenge on This Point

### A. Under *Owens* and *Practical Concepts*, This Court Reviews Successive Immunity Challenges to Default Judgments

Tenex-USA opposed Chabad's Motion to Attach on the ground that the District Court lacked subject-matter jurisdiction—principally, due to the disputed property's location outside the United States—to enter the 2010 Default Judgment and subsequent default Sanctions Judgments against the Russian Federation. *See* Br. 6-8, 25-27. As a panel of this Court explained, such default judgments are susceptible to a post-judgment "collateral attack," particularly in the absence of jurisdiction:

> [T]he defendant may refrain from appearing, thereby exposing himself to the risk of a default judgment. When enforcement of the default judgment is attempted, however, he may assert his jurisdictional objection. If he prevails on the objection, the default judgment will be vacated. If he loses on the jurisdictional issue, on the other hand, his day in court is normally over; as a consequence of deferring the jurisdictional challenge, he ordinarily forfeits his right to defend on the merits.

*Practical Concepts*, 811 F.2d at 1547.

Chabad suggests that the 2010 Default Judgment established jurisdiction over the Russian Federation and "is not subject to collateral challenge"—either by the

Russian Federation or its purported alter-egos, like Tenex-USA—under the *Practical Concepts* framework. Chabad Br. 25-26. Specifically, Chabad contends that Tenex-USA's jurisdictional challenge is barred under *Practical Concepts* because the Russian Federation participated in *Chabad I* in 2008—*i.e.*, two years before the 2010 Default Judgment. *Id.* According to Chabad, Tenex-USA apparently is "barred from relitigating the issue" of subject-matter jurisdiction. *See id.* Chabad is wrong.

As Tenex-USA explained (at 12), the District Court's 2010 Default Judgment and accompanying opinion never discussed the *distinct* issue of subject-matter jurisdiction *as to the Russian Federation itself*, despite the Russian Federation's explicit argument in 2009 that a U.S. court "does not have the authority to adjudicate rights in property that [remains] located in the Russian Federation." JA92. What is more, "the issue of the Russian state's immunity was completely unaddressed" in either the District Court's 2006 decision or *Chabad I*, as the *de Csepel* panel confirmed. *See de Csepel*, 859 F.3d at 1105. Chabad is thus incorrect (at 25) in characterizing Tenex-USA's argument as an assertion that this Court's 2008 decision was "wrong"; rather, the jurisdictional issue Tenex-USA raises was simply unaddressed. And when the Russian Federation defaulted in 2009, it had not exhausted the opportunity to raise the distinct issue of its immunity. Accordingly,

nothing prevents Tenex-USA from now raising this distinct challenge to subject-matter jurisdiction under § 1605(a)(3).

The availability to raise successive jurisdictional challenges is settled, particularly in actions involving the FSIA. As a panel of this Court explained:

> Applying the law of the case doctrine to constrain a court's post-[judgment] assessment of its own jurisdiction based on an earlier determination of that question is inherently incompatible with the established ongoing duty of a court to determine its own jurisdiction at every stage of the legal proceedings. *Cf. Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 95 . . . (1998) ("[E]very federal appellate court has a special obligation to satisfy itself not only of its own jurisdiction, but also that of the lower courts in a cause under review[.]").

*Wye Oak Tech., Inc. v. Republic of Iraq*, 24 F.4th 686, 699 (D.C. Cir. 2022) (declining to preclude, under the law-of-the-case doctrine, Iraq's subsequent jurisdictional challenge under the FSIA, § 1605(a)(2)). Indeed, "it is hard to accept" that the "law of the case doctrine must be rigidly applied to calcify a threshold determination [of] subject-matter jurisdiction," particularly where that determination "pertains to . . . immunity." *Id.* at 698-99.

The procedural history of *Owens*, 864 F.3d at 765-69, is instructive. In *Owens*, Sudan participated actively in the district court beginning in 2004 and initially challenged subject-matter jurisdiction under the FSIA's "terrorism exception" to immunity (now codified at 28 U.S.C. § 1605A(a)). *See id.* at 766. At that time, Sudan contested the "legal sufficiency of the plaintiffs' allegations that

Sudan's material support had caused" the terrorist attacks at issue. *Id.* In 2008, a panel of this Court affirmed the district court's rejection of Sudan's jurisdictional causation argument and remanded. *Id.* Much like the Russian Federation in this case, Sudan then withdrew from the litigation in 2009. *See id.* at 762. Multiple default judgments were subsequently entered against Sudan. *Id.* In 2015, Sudan "reappeared" and filed motions to vacate those judgments. *Id.*

At this later stage, Sudan raised multiple issues of subject-matter jurisdiction, including issues that could have been raised in its prior appeal, but were not—such as, for example, the threshold question of whether the relevant terrorist attacks constituted an "extrajudicial killing" within the meaning of the FSIA. *See id.* at 768. The district court closely assessed Sudan's new immunity arguments in a lengthy 2016 decision, *see Owens v. Republic of Sudan*, 174 F. Supp. 3d 242 (D.D.C. 2016), as did a panel of this Court in 2017. *See Owens*, 864 F.3d at 818 ("Sudan argues . . . [that] the judgments are void for lack of subject jurisdiction . . . . [Review of the] first jurisdictional ground is nondiscretionary."). Neither the district court nor this Court suggested that Sudan's subsequent jurisdictional challenges were improper notwithstanding Sudan's failure to raise all jurisdictional arguments in its prior appeal. Rather, this Court's analysis in *Owens* illustrates that subject-matter jurisdiction, at least under the FSIA, is not a single "issue," but rather a category of multiple, distinct issues.

Chabad further insists (at 26) that "*res judicata* bars" Tenex-USA's jurisdictional challenge because "there is no doubt that the Russian Federation raised numerous defenses to the district court's jurisdiction, and . . . could have raised additional jurisdictional arguments." *Owens* revealed, however, that the dispositive factor under *Practical Concepts* is not whether the jurisdictional challenge *could have* been raised in a prior appeal, but whether the challenged decisions were *default judgments*. And here, they were, as Tenex-USA challenges the 2010 Default Judgment and default Sanctions Judgments.

As the *Owens* panel explained: "Because [Sudan's] argument poses a challenge to the court's subject matter jurisdiction, it was not forfeited by Sudan's failure to appear in the district court." 864 F.3d at 769 (citing *Practical Concepts*, 811 F.2d at 1547). Put differently, "[b]ecause the elements of" Sudan's challenges to the FSIA terrorism exception's "material support and causation [elements] are jurisdictional, Sudan may contest them on appeal even though it forfeited its right to the contest the merits of the plaintiffs' claims." *Id.* at 778.

Chabad's reliance (at 25-26) on *Federated Department Stores v. Mottie,* 452 U.S. 394, 389-99 (1981), and *GSS Group v. National Port Auth. of Liberia*, 822 F.3d 598, 608 (D.C. Cir. 2016), is unavailing. Those cases merely articulate the traditional rule of issue preclusion and do not suggest that separate challenges to jurisdiction, particularly under the FSIA, should be conflated into a single "issue."

15

In fact, the principle allowing successive jurisdictional challenges is reconfirmed by at least four other Circuits, each of which has permitted "subsequent distinct challenges" on separate issues of subject-matter jurisdiction. *E.g.*, *Guevara v. Republic of Peru*, 608 F.3d 1297, 1306-07 (11th Cir. 2010) (permitting two successive challenges by Peru with respect to two distinct aspects of the FSIA's "commercial activity" exception, 28 U.S.C. § 1605(a)(2)); *Flame S.A. v. Freight Bulk Pte. Ltd.*, 807 F.3d 572, 579-80 (4th Cir. 2015) (permitting "subsequent distinct challenges to the [c]ourt's subject matter jurisdiction" because the prior appeal had "substantive questions" that were "different from the arguments [the appellant] now present[ed]"); *Durant, Nichols, Hous., Hodgson, & Cortese-Costa, P.C. v. Dupont*, 565 F.3d 56, 63 (2d Cir. 2009) (rejecting the assertion that "the issue of subject matter jurisdiction" had "already been resolved" in a previous appeal, which considered only "the amount in controversy" but not "whether the parties were citizens of different states"); *United States v. Adesida*, 129 F.3d 846, 850 (6th Cir. 1997) (allowing the defendant to raise "[l]ack of subject matter jurisdiction" in a subsequent appeal "[e]ven though defendant did not raise his argument . . . in the prior appeal").

Chabad's reference (at 26-27) to *Lucky Brand Dungarees, Inc. v. Marcel Fashions Grp., Inc.*, 140 S. Ct. 1589 (2020), also does not change the analysis, as that case merely notes "traditional claim- [and] issue-preclusion principles," but says

nothing about successive challenges to subject-matter jurisdiction in the post-judgment *default* context. *See id.* at 1597.

In sum, as with Sudan's earlier participation in the *Owens* litigation, the Russian Federation's earlier participation in *Chabad I* also does not determine whether this present appeal involves an impermissible collateral attack on a jurisdictional question. Instead, because the challenged decisions in this case were *default judgments*, *Owens* establishes that Tenex-USA's jurisdictional immunity challenge to the 2010 Default Judgment and Sanctions Judgments is permissible under *Practical Concepts*.

## B. *Chabad I* Never Considered the Russian Federation's Own Immunity Under § 1605(a)(3)'s Territorial Nexus Clause

Under *Owens* and *Practical Concepts*, the key question, therefore, is whether *Chabad I* already determined (prior to the Russian Federation's default) that § 1605(a)(3)'s second territorial-nexus clause permitted subject-matter jurisdiction as to the Russian Federation itself. The answer is no.

According to Chabad (at 28), "the *Chabad I* panel manifestly applied the [FSIA] according to its plain text, and with respect to all defendants including the Russian Federation."[2] But Chabad does not (and cannot) identify any passages from

_____

[2] Chabad (at 28) wrongly insinuates that *Chabad II* confirmed that *Chabad I* denied the Russian Federation's own immunity. Because *Chabad II* denied VEB and Tenex-USA's appeals for lack of appellate jurisdiction and standing, respectively, the *Chabad II* panel did not reach subject-matter jurisdiction.

*Chabad I* that considered the Russian Federation's own immunity under § 1605(a)(3). *See id.* at 32-36. In fact, *Chabad I* addressed only unrelated aspects of the FSIA: (1) whether § 1605(a)(3)'s "rights in property" and "violation of international law" clauses were satisfied, (2) whether the FSIA requires "exhaustion" of local remedies, and (3) whether the State Library and State Archive Defendants "engaged in sufficient commercial activity in the United States." 528 F.3d at 942-50.

All that remains of Chabad's argument then is the *Chabad I* panel's single reference to "Russia's immunity" in the final sentence of the decision. *See* Chabad Br. 34 (citing *Chabad I*, 528 F.3d at 955). When read in context, however, this two-word phrase obviously was not part of any affirmative holding that "Russia's immunity" is conclusively abrogated under § 1605(a)(3) in this case.

To the contrary, the *Chabad I* panel held narrowly as follows: "we reverse [the District Court's] finding of Russia's immunity as to the Library claims based on the events of 1917-1925 and 1991-1992." 528 F.3d at 955. This sentence is an explicit reference to the Court's reasoning as to whether Chabad had alleged a "non-frivolous claim of a taking in violation of international law" based upon those two specific sequences of historical events between 1917-1925 and 1991-1992, respectively. *Id.* at 943. In other words, the reference to "Russia's immunity" addressed exclusively § 1605(a)(3)'s "violation of international law clause," which

courts have labeled as "Clause [A]." *See* Chabad Br. 34; *see also id.* at 30 (noting § 1605(a)(3)'s "two separate requirements"). "Clause [A]" is distinct from § 1605(a)(3)'s territorial-nexus clauses (which courts have denoted as Clauses "[B][1]" and "[B][2]," *see id.* at 34-35), and Clause [A] certainly does not concern whether the Russian Federation *itself* was a proper defendant under Clause [B][2] based on the location of the disputed religious texts outside the United States.

This Court's binding decisions in *Simon* and *de Csepel* confirm this analysis. As the *de Csepel* panel explained, "[t]he issue of the Russian state's immunity was completely unaddressed by the district court [in the *Chabad* litigation] and neither raised nor briefed on appeal." 859 F.3d at 1105-06. This same analysis was again confirmed in *Schubarth* and *Philipp*, where both district judges acknowledged the alleged conflict between *Simon* and *Chabad I* as to the interpretation of § 1605(a)(3)'s territorial-nexus clauses—and both panels rejected the existence of any such intra-Circuit conflict. *See* Br. 34-37 (detailing this Court's precedents in *de Csepel*, *Schubarth*, and *Philipp*).

Nor does Chabad analyze the 2010 Default Judgment in any depth. This omission is likely intentional because the 2010 Default Judgment demonstrates that even the District Court recognized that *Chabad I* did not resolve conclusively all jurisdictional issues under the FSIA.

Specifically, in the "FSIA default proceeding" in 2010, the District Court proceeded to consider entirely separate jurisdictional issues that were unaddressed in *Chabad I*. Those issues included whether the State Library and State Archive were properly classified as "agencies or instrumentalities" under the FSIA based on their "core functions." *See* JA109. Notably, Chabad itself provided briefing on these issues during the 2010 "default proceeding"—thus conceding both that *Chabad I* was only a partial decision on the FSIA issues, and that the District Court was obligated by § 1608(e) to analyze *sua sponte* all remaining, unresolved questions of subject-matter jurisdiction, regardless of the Russian Defendants' default. *See* JA105-106; *see also Verlinden B.V. v. Cent. Bank of Nigeria*, 461 U.S. 480, 493 n.20 (1983) ("[E]ven if the foreign state does not enter an appearance to assert an immunity defense, a district court still must determine that immunity is unavailable under the [FSIA]."). However, in 2010, the District Court failed to fulfill its obligation to analyze unresolved questions of subject-matter jurisdiction and never addressed the Russian Federation's own immunity under § 1605(a)(3).

Because *Chabad I* was only a partial decision on the FSIA issues, there are no "jurisdictional ruling[s]" as to the Russian Federation's own immunity that fall under the doctrine of "jurisdictional finality." *See* Chabad Br. 24-27. Consequently, the 2010 Default Judgment and subsequent default Sanctions Judgments are susceptible

to collateral attack—just like any other default judgment rendered without jurisdiction. *See Owens*, 864 F.3d at 769.

## C. This Court's Precedents in the Germany and Hungary Cases Correctly Interpreted § 1605(a)(3)

Chabad (at 37-44) contends that "*Simon* misread *Chabad I*" and that *de Csepel* "deviated from the [FSIA's] text and distorted the balance Congress adopted when it enacted the FSIA." Notwithstanding Chabad's inappropriate urging for reconsideration of an issue well-settled in this Circuit, Tenex-USA will briefly address Chabad's incorrect argument. The FSIA's text and this Court's consistent decisions in the Germany and Hungary cases preclude Chabad's misguided interpretation, and mandate reversal of the District Court's ruling on subject-matter jurisdiction as to the Russian Federation.

As an initial matter, because there is no conflict between *Chabad I* and the Germany and Hungary cases, the latter are binding as to the scope of § 1605(a)(3)'s alternative territorial-nexus clauses. *See* Br. 34-38. This Court is therefore foreclosed from considering this question of statutory interpretation *de novo*. *See Ranger Cellular v. FCC*, 348 F.3d 1044, 1049-50 (D.C. Cir. 2003) ("Once a panel of this court has decided a matter, subsequent panels are bound by that decision unless and until it is changed by the court en banc.").

In any event, *Simon* and its progeny were decided correctly. *First*, § 1605(a)(3)'s territorial-nexus clauses "make sense only if they establish

*alternative* thresholds . . . depending on whether the plaintiff seeks to sue a foreign state *or* any agency or instrumentality of that state." *de Csepel*, 859 F.3d at 1107-08 (emphasis added).

The United States has supported this reading since at least 2004. *See* Brief for the United States as Amicus Curiae at 11, *Garb v. Republic of Poland*, 440 F.3d 579 (2d Cir. 2004) (No. 02-7844) ("Section 1605(a)(3) is properly interpreted to strip immunity from a foreign state only if its own contacts satisfy the requirements for jurisdiction under the provision's first prong."); Brief for the United States as Amicus Curiae at 11, *de Csepel v. Republic of Hungary*, No. 17-1165 (Dec. 4, 2018) ("2018 U.S. Amicus") (same); *see also* Brief of the United States as Amicus Curiae at 10, *Kingdom of Spain v. Cassirer*, No. 10-786 (May 27, 2011) (same); Brief for the United States as Amicus Curiae at 22, *Philipp v. Fed. Republic of Germany*, 141 S. Ct. 188 (2020) (Nos. 19-351, 19-520) (same).

Chabad contends (at 37) that the FSIA conflates "foreign state" to include "both the sovereign and its instrumentalities." But the word "both" never appears in 28 U.S.C. § 1603 nor § 1605(a)(3). These provisions actually use the disjunctive "or." Under § 1603(a), a "'foreign state' . . . includes a political subdivision of a foreign state *or* an agency or instrumentality of a foreign state" (emphasis added). Likewise, the word "or" separates the two territorial-nexus clauses of § 1605(a)(3).

The FSIA's text, therefore, supports only a *disjunctive* construction ("or") rather than the *conjunctive* construction ("both") invented by Chabad.[3]

*Second*, "[t]he FSIA carefully distinguishes foreign states [themselves] from their agencies and instrumentalities." *de Csepel*, 859 F.3d at 1107. "This theme permeates the FSIA," as evidenced in the FSIA's provisions on punitive damages (§ 1606), service (§ 1608), and attachment immunity (§ 1610). 2018 U.S. Amicus at 14. The FSIA thus reflects the settled principle "that government instrumentalities established as juridical entities distinct and independent from their sovereign should normally be treated as such." *First Nat'l City Bank v. Banco Para El Comercio Exterior de Cuba*, 462 U.S. 611, 626-27 (1983). Accordingly, § 1605(a)(3) provides no basis for "[c]ollapsing the well-worn distinction between foreign states and agencies and instrumentalities." *de Csepel*, 859 F.3d at 1108.

*Third*, Chabad asserts that "the *de Csepel* panel's application of [§ 1605(a)(3)'s] commercial nexus provision is inconsistent with the FSIA's history and purpose." Chabad Br. 42-44. According to Chabad, "the second prong of § 1605(a)(3)" provided plaintiffs "a pathway to bring a claim against . . . *the*

---

[3] Moreover, the FSIA consistently uses the singular "foreign state" rather than the plural throughout §§ 1603 and 1605. Chabad's assertion that jurisdiction over *two different defendants* upon satisfaction of *only one territorial nexus* therefore finds no support in the FSIA's text. *See* 2018 U.S. Amicus 11 (explaining that parties "cannot mix and match, using [§ 1605(a)(3)'s] looser 'agency or instrumentality' standard to bootstrap jurisdiction over the foreign state itself.").

*sovereign itself* . . . so long as the instrumentality engaged in commercial activity in the United States." *Id.* at 43. But Congress's true motivations underlying § 1605(a)(3)'s separate territorial-nexus clauses were different, as the United States has explained. Even before the FSIA was enacted in 1976, the State Department's practice was to invite courts to exercise jurisdiction over agencies and instrumentalities engaged in U.S. commercial activity, as eventually codified in § 1605(a)(3)'s "Clause [B][2]." *See* 2018 U.S. Amicus 18. The FSIA's incremental innovation was to include the first territorial-nexus clause (*i.e.*, "Clause [B][1]"), which was evidently inspired by the prior practice of denying immunity to foreign states themselves "to determine rights to property *in the United States*" for *in rem* proceedings. 2018 U.S. Amicus at 17-18 (emphasis added). The FSIA's legislative history thus provides no support for Chabad's contention that the Germany and Hungary cases supposedly "deviated" from the FSIA's text by limiting the application of "Clause [B][2]" to an "agency or instrumentality" but not the foreign state itself. *See* Chabad Br. 44.

## III. The District Court's Extraterritorial Turnover Order Violates the FSIA

Chabad suggests that 28 U.S.C. § 1606 somehow permitted the District Court to order the Russian Defendants to bring the disputed religious texts into the United States and into the District Court's jurisdiction because such a remedy is available in an ordinary private lawsuit. *Id.* 45-46. Chabad further contends that because

"§ 1605(a)(3) grants the district court jurisdiction over unlawful expropriation claims," attachment of sovereign property is permissible "without regard to the location of the property." *Id.* at 46.

These arguments are inapposite, as Chabad mistakenly relies upon § 1606's general liability provision and § 1605(a)(3)'s jurisdictional immunity provision to circumvent the specific territorial limitations in §§ 1609-1610—the FSIA attachment provisions applicable here. Sections 1609-1610 provide explicitly that U.S. courts have jurisdiction over a foreign state's property "*in the United States*" subject to certain conditions. 28 U.S.C. § 1610(a) (emphasis added); *see also TIG*, 967 F.3d at 781-82 (the "first requirement" under § 1610(a) is that "property [is] in the United States"). To be clear, Tenex-USA does not argue that orders of "replevin" are impermissible under the FSIA. Rather, Tenex-USA argues that the "replevin" order at issue violates the *territorial limitation* of the FSIA's attachment provisions.

Chabad ignores the principle that courts in the FSIA context "may not grant, by injunction, relief which they may not provide by attachment." *S&S Machinery Co. v. Masinexportimport*, 706 F.2d 411, 418 (2d Cir. 1983). And Chabad's attempt to distinguish *S&S* (at 51) is unpersuasive. In *S&S*, the Second Circuit affirmed vacatur of both an injunction and an order of pre-judgment attachment because § 1610 rendered such property immune. 706 F.2d at 418. That *S&S* concerned pre-judgment attachment that the district court sought to impose by injunction is

25

analogous to the present case, which concerns the District Court's attempt to order by injunction what the FSIA otherwise prohibits (*i.e.*, turnover of property outside the United States).

As the United States confirmed, "[t]he FSIA, thus, does not authorize" the District Court's improper turnover order nor enforcement of such order "through . . . sanctions against Russia for failure to surrender property that Russia holds on its own territory." JA142 (citing *S&S*); *see also Hardy Expl. & Prod. (India) v. Gov't of India*, 314 F. Supp. 3d 95, 111 (D.D.C. 2018) (the FSIA does not authorize "awards of specific performance to be completed outside the territorial jurisdiction of the United States").

Finally, there is no merit to Chabad's seeming suggestion (at 47) that attachment of Tenex-USA's U.S.-based assets would somehow rectify the violation of the territorial limits of the FSIA. Chabad does not seek to attach Tenex-USA's assets as a measure of *damages* for its alleged loss—Chabad contends that "damages would not suffice." *Id*. at 51. Rather, Chabad seeks Tenex-USA's assets in an effort to execute on contempt sanctions, for the Russian Federation's failure to surrender property located in its own territory. *See* JA100. Because the District Court lacked authority under the FSIA to enter the turnover order that it did, the sanctions and Sanctions Judgments that have flowed from it are also invalid.

**IV. The Default Sanctions Judgments Arise from a Civil Contempt Order and Not a "Judgment Establishing" the Type of "Rights in Property" Set Forth in § 1610(a)(3)**

In the proceedings below, Chabad sought an order under § 1610(c) that would allow it to enforce *sanctions* judgments premised upon the District Court's finding that the Russian Defendants are in civil contempt. *See* JA160. Echoing the District Court's flawed analysis, Chabad contends (at 48-49) that "the contempt sanctions pertain to, or are associated with, the underlying judgment ordering the return" of the disputed religious texts, supposedly satisfying § 1610(a)(3)'s "relates to" requirement.

The FSIA does not support this overbroad reading of § 1610(a)(3), and § 1610(a)(3)'s language does not encompass the attachment Chabad seeks.

*First*, Chabad improperly minimizes the distinction between the *issuance* of contempt sanctions and the *enforcement* of accrued contempt sanctions against foreign sovereign property. As Tenex-USA explained, while the FSIA may not preclude a court from *issuing* contempt sanctions against a foreign sovereign, there is no basis in the FSIA (or case law) providing that a judgment of civil contempt sanctions may be *enforced* against sovereign property under of the narrow circumstances prescribed in § 1610(a) absent a waiver. *See* Br. 47-48; *see also* JA195-197 ("None of [§ 1610's] exceptions to execution immunity" "permit execution against Russian assets for purposes of satisfying the sanctions

judgment[s].""); *In re Grand Jury Subpoena*, 912 F.3d 623, 633 (D.C. Cir. 2019) (leaving the issue of "[w]hether and how" a contempt order against a foreign sovereign "[could] be enforced by execution . . . for a later day."); *FG Hemisphere Assocs. v. Democratic Republic of Congo*, 637 F.3d 373, 375 (D.C. Cir. 2011) (noting that any "attempt to enforce [a] sanction" against a foreign sovereign "could prove problematic"). The FSIA's bar on enforcement of coercive measures against foreign states is further reflected in § 1606, which provides that the foreign state itself "shall not be liable for punitive damages."

*Second*, Chabad suggests (at 49-50) that § 1610(a)(3) permits attachment to enforce *any* judgment "involving unlawfully expropriated property." This is not what the statute says, and Chabad's sweeping construction disregards the rule that the FSIA's immunity exceptions must be "narrowly construed." *Ambar v. Fed. Republic of Germany*, 596 F. Supp. 3d 76, 82 (D.D.C. 2022) (citing *Philipp*, 141 S. Ct. at 713).

Because the Sanctions Judgments are a coercive measure designed to induce compliance with the improper turnover order, the Sanctions Judgments are not, in themselves, judgments *establishing* property rights within the meaning of § 1610(a)(3). *See* Br. 46. Indeed, Chabad (at 50) concedes that, "in this case," the District Court entered "contempt orders for failure to follow a judgment directing the return of the property." Accordingly, Chabad and the District Court's attempt to

extend the definition of "relates to" to encompass the Sanctions Judgments—which themselves do not adjudicate any property rights—fails to satisfy the narrow circumstances set forth in § 1610(a)(3).

*Finally*, Chabad suggests that "Congress would not have wanted to exempt contempt sanctions from a district court's" authority to enforce against sovereign property. *Id.* at 50-51. But Chabad's approach offends the "special protection" Congress granted to foreign sovereign property when crafting the FSIA. *Walters v. Indus. & Commer. Bank of China*, 651 F.3d 280, 289 (2d Cir. 2011). The FSIA's presumption of attachment immunity reflects Congress's understanding that "execution against a foreign state's property" would be "a greater affront to [a foreign state's] sovereignty than merely permitting jurisdiction over the merits of an action." *Id.* (quotation marks omitted).

Chabad alludes to the possibility of an incongruous result where a party seeking the return of its "priceless" property has no remedy, but the FSIA "explicitly contemplates that a court may have jurisdiction over an action against a foreign state and yet be unable to enforce its judgment." *FG Hemisphere*, 637 F.3d at 377; *see also* JA140 (quoting same).

## CONCLUSION

For the foregoing reasons, and those stated in Tenex-USA's Opening Brief, this Court should reverse the District Court's ruling on subject-matter jurisdiction,

vacate the 2023 Order, and remand with instructions to deny Chabad's Motion to

Attach with prejudice.

Dated: January 5, 2024          Respectfully submitted,
     Washington, DC

<div style="margin-left: 40%;">

*/s/ Carolyn B. Lamm*
Carolyn B. Lamm (D.C. Bar No. 221325)
Nicolle Kownacki (D.C. Bar No. 1005627)
Jacqueline L. Chung (D.C. Cir. No. 61613)
Ena Cefo (D.C. Bar No. 1044266)
**WHITE & CASE** LLP
701 Thirteenth Street, NW
Washington, DC 20005
Telephone: (202) 626-3600
clamm@whitecase.com
nkownacki@whitecase.com
jacqueline.chung@whitecase.com
ena.cefo@whitecase.com

*Counsel for Appellant*
*Tenex-USA, Incorporated*

</div>

# CERTIFICATE OF COMPLIANCE

This document complies with the type-volume limitation of Rule 32(a)(7)(B) of the Federal Rules of Appellate Procedure. This brief contains 6,493 words (as calculated by the automatic word count function of Microsoft Word), excluding the parts of the brief exempted by Rule 32(f) of the Federal Rules of Appellate Procedure.

This document complies with the typeface requirements of Rule 32(a)(5)(A) of the Federal Rules of Appellate Procedure and the type-style requirements of Rule 32(a)(6) of the Federal Rules of Appellate Procedure because this document has been prepared in a proportionally spaced typeface in 14-point Times New Roman font.

**WHITE & CASE**

*/s/ Carolyn B. Lamm*

Carolyn B. Lamm (D.C. Bar No. 221325)
Nicolle Kownacki (D.C. Bar No. 1005627)
Jacqueline L. Chung (D.C. Cir. No. 61613)
Ena Cefo (D.C. Bar No. 1044266)
WHITE & CASE LLP
701 Thirteenth Street, NW
Washington, DC 20005
Telephone: (202) 626-3600
clamm@whitecase.com
nkownacki@whitecase.com
jacqueline.chung@whitecase.com
ena.cefo@whitecase.com

*Counsel for Appellant*
*Tenex-USA, Incorporated*

## CERTIFICATE OF SERVICE

I hereby certify that on January 5, 2024, a true and correct copy of the foregoing Final Reply Brief of Appellant Tenex-USA was served to all parties or counsel of record through the CM/ECF system.

I further certify that on January 5, 2024, a true and correct copy of the foregoing Final Reply Brief of Appellant Tenex-USA will be served by registered mail service on each of the following:

Ministry of Justice of the Russian Federation
Attn: Hon. Konstantin Chuychenko, Minister
14 Zhitnaya Street
GSP-1 Moscow, Russia 119991

Ministry of Culture of the Russian Federation
Attn: Hon. Olga Lyubimova, Minister
7/6, Bldg. 1, 2, Malyy Gnezdnikovskiy Pereulok
Moscow, Russia 125993

Russian State Military Archive
Attn: Vladimir N. Kyzelenkov, General Director
29 Admiral Makarov Street
Moscow, Russia 12512

Russian State Library
Attn: Vadim Valerievich Duda, General Director
3/5, Vozdvizhenka Street, 2nd Entrance
Moscow, Russia 119019

*/s/ Carolyn B. Lamm*